FARMERS' EDUCATIONAL & COOP. UNION, Plaintiffs,
v. CIRCUIT COURT OF CHARLES MIX COUNTY,
et al., Defendants.

Original Proceeding

(40 N. W.2d 402)

(File No. 9129. Opinion filed December 22, 1949)

As corrected January 5, 1950

204

**Joseph Robbie, Jr.,** Mitchell, **Fellows & Fellows,** Mitchell, for Plaintiffs.

**H. A. Poley,** Omaha, Neb., **H. G. Burke,** Omaha, Neb., **F. G. Warren,** Sioux Falls, **R. Williamson,** Aberdeen, for Defendant Northwestern Bell Telephone Co.

RUDOLPH, J.   The Northwestern Bell Telephone Company appealed to the circuit court from an order of the Public Utilities Commission refusing the Company the right to place in effect increased rates for telephone use.   The circuit court entered an order which, pending the decision in circuit court, enjoins the enforcement of the Commission's order, and permits the Telephone Company to place in effect certain increased rates upon the furnishing of a bond by the Company conditioned upon the return to the payees of any payment in excess of the Commission's order should that order be sustained on appeal.   This is an original proceeding in certiorari to review the validity of the order of the circuit court.

On November 24, 1947, the Telephone Company filed an application for increased rates with the Public Utilities Commission.   The basis of this application was that the

rates then in existence were inadequate and confiscatory. The Company asked that it be granted authority to increase existing rates as set forth in its Exhibits A and B, which proposed rates were estimated to produce approximately $572,000 additional revenue annually. Hearings were had upon this application but before the conclusion of the hearings the Company on November 29, 1948, filed with the Commission an amendment and supplement to its original application wherein it requested that rates be allowed higher than those set forth in its Exhibits A and B. Following the filing of this amended application further hearings were held before the Commission and the evidence presented covered the operations of the Company ending September 30, 1948 except that there was presented to the Commission a showing that in October 1948 a wage increase was granted to its employees amounting to approximately $212,000 annually.

On October 8, 1949, the Commission, by a majority decision, denied the Company any relief. On October 14, 1949, an application by the Company for a rehearing was denied. The Company perfected its appeal to the circuit court on October 19, 1949 and on October 21 filed its application with the circuit court for ancillary relief pending the appeal which resulted in the order now before us.

In support of its application the Company submitted the affidavit of its vice president and general manager wherein was set forth the value of the Company's property, the revenues received and the expenses paid for the first nine months of 1948, which, according to the affidavit, disclosed an actual loss of $19,813.00. The affidavit then set forth the valuation of the Company property as of October 31, 1949 and proceeded to show the revenues and expenses incurred during the eleventh-month period between October 1st, 1948, when the hearings before the Commission were closed, and August 31st, 1949, which it was asserted resulted in an actual loss to the Company of $206,931.00. The affidavit alleged the proposed and requested increased rates would return to the Company only 4.08% on its investment. The Commission submitted the affidavit of its engineer which set forth the valuations, revenues and ex-

pense as claimed by the Company and as determined by the Commission after its hearings and alleged that the rate of return being received upon the investment of the Company as shown by the report and order of the Commission was 6.98%. By reference the entire proceedings before the Commission including the final report and order of the Commission was made a part of the affidavit. We believe this statement of facts sufficient for our present purpose.

■ ■ It may be conceded at the outset that any final rate order of the Public Utilities Commission which denies to a public utility an opportunity to earn a fair rate of return on the fair value of its property amounts to a taking of property in violation of the due process clause of the 14th Amendment to the Constitution of the United States and Paragraph 2, Article VI, Constiution of South Dakota. Application of Northwestern Bell Telephone Co., 69 S.D. 36, 6 N.W.2d 165. It may also be conceded that a Commission order denying an increase in rates amounts to confiscation if by such denial the utility is prevented from earning a fair return on its investment. Banton v. Belt Line Railway Corp., 268 U.S. 413, 45 S.Ct. 534, 69 L.Ed. 1020.

■ Whether confiscation of the property of a utility has resulted from an order of the Commission is a question which may be determined by the courts. Application of Northwestern Bell Telephone Co., supra; Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037. Our statute, SDC 52.05, provides for judicial review of final orders of the Commission by providing for the appeal to the circuit court, under which statute the Telephone Company proceeded in this case. We consider first whether this appeal statute is authorization for the court's order.

The order with which we are here concerned amounts to something more than a stay order pending the appeal. Instead of staying proceedings or preserving the status quo this order permits affirmative action whereby the status quo is changed, and temporarily that which the Commission has denied is permitted. We find nothing in the statute which authorizies this type of order. The statute, SDC 52.0502,

does provide for a stay but this is as far as the statute goes. Nor do we believe that authority for this order is to be found in SDC 52.04, which relates to rate injunctions. Just what place, if any, this chapter of our code has in the rate making picture, in view of the fact that the appeal is made the exclusive remedy to review any action of the Commission, we need not determine. We hold the view, however, that the remedy therein provided is something different and apart from the appeal procedure under which this cause is before the circuit court.

■ It is contended that there must be power in the court on appeal to enter this order, otherwise confiscation would result while the appeal is pending. This argument assumes the postulate, that is, that confiscation is established. SDC 52.0310 provides that in any action or proceeding wherein any order of the Public Utilities Commission shall in anywise come in question, the validity of such order shall be presumed. No doubt the reason underlying this statutory presumption is that rather elaborate statutory provision is provided for the determination of fair and reasonable rates by the Commission. SDC 52.02. We know that the Commission employs a corps of experts including a statistician, engineer and rate experts. After the Commission has followed the statutory procedure by giving all interested a fair hearing, and has had the benefit of the experts employed, the order determining the rates resulting from its considered judgment is made presumptively correct and valid. The effect given the order is not, therefore, based upon whim or caprice, but finds sound support in the background of hearings on notice, expert testimony and deliberation which must be indulged before the order is made.

The appeal procedure contemplates a speedy disposal of the judicial proceeding. It is provided, SDC 52.0502, that any appeal from the Commission's order shall be taken within thirty days after the application for rehearing is denied. This appeal was taken five days after the application for rehearing was denied. Upon appeal the case is heard and determined upon the record made before the Commission and no new evidence is permitted. The actual trial,

therefore, would consume but little time. SDC 52.0503 requires that the cause on appeal "shall be heard and determined speedily on the record as made before the Commission and have precedence over all other civil causes pending before said Court." That this procedure is effective in producing the speedy action intended is disclosed in the present record by the remarks of the trial judge to the effect that he intended to have the cause finally decided before the 1st of January, and except for this proceeding, would doubtless have done so.

Whether a situation may ever arise justifying the trial court on appeal from a Commission order to enter an order similar to that entered in this proceeding, we do not decide. We are convinced, however, that the trial court was without power in this instance. The cause before the circuit court was there only by virute of the appeal, and the only question before the court was the validity of the Commission's order. In determining this question the court was limited to the record made before the Commission. The court was not concerned with the question of whether conditions arising since the close of the hearings before the Commission caused a confiscation of the Company's property, and we think it clear that any showing for this temporary order made by affidavits relative to conditions subsequent to the hearings before the Commission, was not a proper subject for consideration by the court. The competent showing before the court was simply the showing made before the Commission. Upon the basis of that showing the Company was contending, and the court held, that the rates fixed by the Commission were prima facie confiscatory. But the statute provides that the rates as fixed by the Commission are presumptively valid. We are of the opinion that this statutory effect given the order must adhere until the appeal is decided on its merits. Whether the record made before the Commission overcomes the presumption attached to the Commission's order is the issue on the merits and the only issue. Should it be held that the trial court has the power temporarily to override the statutory effect of the order on the hearing of this preliminary motion by simply finding that it is reasonably probable that

the rates are confiscatory, without so determining, the pre-sumption attached to the order by the statute would be un-determined and such holding would be contrary to the legis-lative purpose.

■ ■ We do not believe this holding violates due pro-cess. Due process when applied to substantive rights means that the government is without the right to deprive a person of life, liberty or property by an act that has no reasonable relation to any proper governmental purpose or which is so far beyond the necessity of the case as to be an arbitrary ex-ercise of governmental power. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330; Green v. Frazier, 253 U.S. 233, 40 S.Ct. 499, 502, 64 L.Ed. 878; House v. Mayes, 219 U.S. 270, 31 S.Ct. 234, 55 L.Ed. 213; Jones v. Portland, 245 U.S. 217, 38 S.Ct. 112, 62 L.Ed. 252, L.R.A.1918C, 765, Ann.Cas.1918E, 660; 16 C.J.S., Constitutional Law, §567. See also Chicago R. I. & P. R. Co. v. Nebraska State Ry. Commission et al., 85 Neb. 818, 124 N.W. 477, 26 L.R.A., N.S., 444.

■ Rate fixing is a legislative process. Our legislature has created the Public Utilities Commission and endowed it with certain powers when pursued result in determining the ultimate fact of a reasonable rate. However, the pro-cess remains legislative in character. The Commission is not a court and cannot exercise judicial functions. Under existing economic conditions rate fixing is a complicated process; it requires a peculiar knowledge and is a field for specialists. All this, the legislature recognized in provid-ing its machinery and in giving the statutory effect to the Commission's order. The legislature has provided for a speedy appeal and determination of any judicial question involved. To hold that due process requires that pending the decision on appeal the work of the Commission may be set aside on a finding of probable error only, falling short of finding that the Commission was definitely wrong, and the Company permitted to fix its own rates independent of the machinery set up by the legislature, would be, in part at least, destructive of the legislative process. We think

there is a reasonable relation between the effect the legislature has given the Commission's order, as herein construed, and the whole process of rate fixing as set up by the legislature. The effect given this order is not arbitrary nor, as stated above, is it based upon whim or caprice.

The Company has cited the case of Southern Bell Telephone Co. v. Railroad and Public Utilities et al., 76 P.U.R. 101, but in that case it appears that no injunction issued while the case was in the trial court. The injunction that was issued was after the trial court had determined on the merits that the Company's property was being confiscated and it was held that the decree of the trial court came to the appellant court with the presumption that it was correct. If there were a presumption of validity attached to the Commission's order that effect had been overcome by the holding of the trial court.

The case of Pacific Telephone & Telegraph Co. v. Kuykendall, 265 U.S. 196, 44 S.Ct. 553, 555, 68 L.E. 975, involved a Washington statute which denied a supersedeas not only before but after a decision by the trial court and pending appeal to the Supreme Court. The court said, "The state statute forbidding a stay of proceedings until a a final judicial decree was rendered, of course, could not prevent a federal court of equity from affording such temporary relief by injunction as the principles of equity procedure required." But the company in this case is not in a federal court of equity, and it is in the state court only under the appeal statute. Whether it has additional rights in federal court or in the state court under a different type cf proceeding is not now before us. The company has proceeded under the appeal statute, and is here contending that under that statute the court was acting within the scope of its authority in entering this order. There is this distinction also between the Washington statute and ours. The Washington statute expressly denied supersedeas not only before but after a decision by the trial court and pending appeal to the supreme court. Our holding in this case is limited to the power of the circuit court while the case is pending on appeal in that court. What would be the power of this court on appeal here should the trial court

determine the rates as fixed by commission are unreasonable is not now before us.

Cited also is the case of Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 43 S.Ct. 353, 354, 67 L.Ed., 659, which was an action in federal court for an injunction. The court in that case said: "Coming to the principal question, if the plaintiffs respectively can make out their case, as must be assumed for present purposes, they are suffering daily from confiscation under the rate to which they now are limited." We think it clear that under our statutes the circuit court on appeal is not justified in making the same assumption that the federal court made in this case. Under the statutory effect given the Commission's order, the circuit court on appeal must assume, until clearly established otherwise, that the order fixes a just and reasonable rate.

The case of Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972, involved a legislative act increasing a severance tax. The injunction simply maintained the status quo. We do not believe that the broad principles announced in this case should govern our disposition of the question here involved in view of the specific statutory provisions, including the complete statutory setup for rate fixing.

Any further review of cited cases is unnecessary.

The order reviewed herein is annulled.

All the Judges concur.

MEDIN, Circuit Judge, sitting for SMITH, P.J., disqualified.