**A. J. INDUSTRIES, INC., Petitioner,**

v.

**ALASKA PUBLIC SERVICE COMMIS-SION, Respondent,**

**City of Juneau, City of Douglas, Greater Juneau Borough and Alaska Electric Light and Power Company, Admitted Parties.**

**No. 1173.**

Supreme Court of Alaska.

June 15, 1970.

Lester W. Miller and Milton Souter Kay, Miller & Libbey, Anchorage, for petitioner.

G. Kent Edwards, Atty. Gen., Juneau, Shirle A. Debenham, Asst. Atty. Gen., Anchorage, for respondent.

Billy G. Berrier, Borough Atty., Juneau, for admitted parties.

Before BONEY, Chief Justice, DIMOND and RABINOWITZ, Justices, and LEWIS and FITZGERALD, Judges.

OPINION

BONEY, Chief Justice.

This case involves a petition for review of a superior court judgment denying the petitioner's request for a preliminary injunction. The petitioner, A. J. Industries, Inc., is a public utility furnishing wholesale electricity in the Juneau area. The respondent is the Alaska Public Service Commission. Parties admitted on the side of the respondent are the Alaska Electric Light and Power Company—immediate consumer of electricity produced by A. J. Industries—and three local government units—the City of Juneau, the City of Douglas and the Greater Juneau Borough —all representing the ultimate consumers of electricity in the area supplied by A. J. Industries. The background of this case is complicated, extends over a period of several years, and involves the intricate progress of a request for a rate increase through the judicial structure of an administrative agency. However, for the purposes of the present case, a cursory review of the facts will suffice.

In February 1965, the petitioner filed with the Public Service Commission a proposal for increasing its rates. The proposal was opposed, and hearings were subsequently held on the matter. As a result of the hearings it was determined that more information was needed to set a final rate; an interim rate was established based on the petitioner's book figures for net plant and depreciation. On June 3, 1968, after additional hearings and briefs, a hearing officer issued a decision on the petitioner's proposed increase. On December 24, 1968, the Public Service Commission approved and supplemented the substance of the hearing officer's decision. This order of the Commission was not final because it required the petitioner to file statements of certain additions and expenses. However, on April 8, 1969, the Commission issued its "First Supplemental Order", which is for the purposes of this petition the final order of the Commission. The order explained in greater detail—but did not otherwise substantially alter—the previous order.

A. J. Industries commenced an action in superior court for review of the Commission's action; it also sought a preliminary injunction to prevent enforcement of the rate set by the Commission's "First Supplemental Order". In both actions the petitioner specified four errors allegedly committed by the Public Service Commission in setting the new rate. It was first charged that the Commission was mistaken in basing its final rate on the petitioner's book figures as to value instead of on offered evidence of original cost. It was next contended that error was committed in the ordering of a $50,000 disallowance from operating expenses as a penalty for inefficiency. Also charged as error was the setting of a rate of return of 5.75% on the petitioner's debt (although the petitioner later conceded that this was its actual debt cost), and 10% on its equity. It was additionally charged that the Commission wrongfully disallowed an amount for the 10% income tax surcharge to be added to the petitioner's revenue requirements. The petitioner alleged that these errors resulted in great losses to it and amounted to an unconstitutional confiscation of funds.

After conducting hearings on the request for a preliminary injunction, the superior court, on June 3, 1969, signed an order denying the request for preliminary relief. A. J. Industries immediately petitioned to this court for review of the superior court's decision. After hearing oral argument and considering the extensive briefs of the parties we have decided to grant review in this matter.[1]

■ It is first contended by respondent that, by virtue of Alaska's statutory law, the superior court had no jurisdiction to allow preliminary relief of the type sought by the petitioner.[2] In support of its contention, the respondent has cited Farmer's Educational and Cooperative Union v. Circuit Court, 73 S.D. 203, 40 N.W.2d 402 (1949). Although that case appears to be in point with the present case, we are not persuaded that it should be followed in Alaska. AS 44.62.560(e) provides:

The superior court may enjoin agency action in excess of constitutional or statutory authority at any stage of an agency proceeding. If agency action is unlawfully withheld or unreasonably withheld, the superior court may compel the agency to initiate action.

We read this provision as allowing the superior court to assert jurisdiction and grant preliminary relief in a case such as the present one, where an agency has established a permanent rate. The statutes cited by the respondent in support of its position may serve to delimit the relationship between an agency and a utility; they may, further, go the proper weight to be accorded a rate set by an agency. However, we cannot agree with the respondent that these provisions deprive the courts of Alaska of jurisdiction. Accordingly, we hold that the superior court did not commit error in finding that it had jurisdiction in this matter.

The question we must now decide is whether the superior court erred in refusing to grant preliminary injunctive relief to the petitioner. Upon a reading of the order denying the request for a preliminary injunction it is evident that the superior court grounded its conclusion in a

---

1. Review is granted pursuant to Sup.Ct.R. 23 and 24. Sup.Ct.R. 23 provides in relevant part:

 An aggrieved party may petition this court for review of any order or decision of the superior court, not otherwise appealable under Rule 6, in any action or proceeding, civil or criminal, as follows:
 (a) From interlocutory orders * * * refusing or dissolving injunctions * * *.

 Sup.Ct.R. 24 provides in part:

 A review shall not be a matter of right, but will be granted only: * * * (2) where the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighed by the claim of the individual case that justice demands a present and immediate review of a particular non-appealable order or decision * * *.

2. The respondent's position is taken from two statutes. AS 42.05.240 provides:

 Rates, tolls, charges, schedules and joint rates fixed by the commission shall be in force and are prima facie lawful. Regulations, practices and services prescribed by the commission shall be in force and are prima facie reasonable unless finally found otherwise in an action brought for that purpose under this chapter.

 AS 42.05.260 provides:

 Pending judicial review as provided in the Administrative Procedure Act (AS 44.62), the utility affected by an order or judgment of the commission may collect the rate as fixed by the order or judgment or at the old rate, whichever is higher in amount, and shall refund the difference between the old rate and the rate fixed by the order or judgment to the consumer if the difference is not sustained finally.

 From these two sections the respondent argues it is clear that rates set by the commission may be altered by the courts only through the normal course of adjudication on the merits, and not through preliminary actions. The respondent contends that, in providing that an aggrieved party could continue to charge its preexisting rate pending final adjudication in the court, the legislature meant to preclude all other avenues of relief outside the normal course of judicial review.

finding that the petitioner would not succeed on the ultimate adjudication of the merits of its claims. A good deal of the discussion in the parties' briefs to this court has also centered upon the issue of the probability of the petitioner succeeding in the final adjudication of this matter.

In ruling on requests for preliminary relief pending final adjudication, it is of considerable importance that the court avoid extensive involvement in the merits of the issues between the parties. The necessity of avoiding litigation of the merits at this early stage stems from two factors. First a ruling on the merits in an action for preliminary relief would be premature, since it would usually be based on an incomplete record and made with an insufficient amount of time. Second, a ruling at this early stage would ultimately result in forcing the court to rule on the merits of the case twice—once at the preliminary stage and once in the final adjudication.

The necessity to avoid premature consideration of the merits of a controversy has been recognized and consequently it is usually held that a clear showing of probable success on the merits must be made before preliminary injunctive relief will be accorded.[3]

But we do not think a showing of probable success on the merits should have been required for the petitioner to succeed in the present case. While the rule requiring a clear showing of probable success applies in situations where the party asking for relief does not stand to suffer irreparable harm,[4] or where the party against whom the injunction is sought will suffer injury if the injunction is issued,[5] a different rule applies where the party seeking the injunction stands to suffer irreparable harm and where, at the same time, the opposing party can be protected from injury. This latter rule was set out by the United States Supreme Court as early as 1929:

Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to the opposing party, even if the final decree be in his favor, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted.[6] (Citations omitted.)

This approach is termed the "balance of hardships" approach. The balance of hardships is determined by weighing the harm that will be suffered by the plaintiff if an injunction is not granted, against the harm that will be imposed upon the defendant by the granting of an injunction. The effect of the balance of hardships approach on the usual standard of probable success has more recently been stated in Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953):

To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i. e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.[7]

3. *See, e. g.*, Yakus v. United States, 321 U.S. 414, 440–441, 64 S.Ct. 660, 88 L.Ed. 834, 857 (1944); H. E. Fletcher Co. v. Rock of Ages Corp., 326 F.2d 13, 17 (2d Cir. 1963).

4. In Miller v. Atkinson, 365 P.2d 550 (Alaska 1961), we held that preliminary injunctive relief was inappropriate where there was no showing of irreparable harm.

*See also* H. E. Fletcher Co. v. Rock of Ages Corp., *supra* n. 3.

5. Yakus v. United States, *supra* n. 3.

6. Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972, 973 (1929).

7. *Accord*, Unicon Management Corp. v. Koppers Co., 366 F.2d 199 (2d Cir. 1966).

In the present case, it is clear that if the allegations of the petitioner are ultimately determined to be correct, the petitioner will have suffered great harm. Furthermore, the harm suffered by the petitioner will be irreparable, since it appears to be well settled that a public utility cannot recoup past losses.[8]

As for the respondent and the admitted parties, the granting of an injunction would result in a higher rate charged by the petitioner and would work to their detriment. However, he possibility of injury from the injunction can be adequatley insured against by the creation of a trust into which funds equalling the difference between the higher rate charged by the petitioner and the permanent rate set by the commission would be deposited pending litigation of the merits. In the event that the petitioner's claim is defeated at trial, the trust funds would be refunded to the consumers. It appears to be well settled that in utility cases involving requests for preliminary injunctions the establishment of such trusts or the posting of bonds will adequately protect the interests of the consumers.[9]

The matter of creating a trust for the protection of the consumer is complicated in the present case by the fact that the petitioner sells power primarily at wholesale, and thus does not usually sell electricity to the ultimate consumers. In such a case it is likely that any rate increase effected by the petitioner will simply be passed along to the ultimate consumer. Clearly, the ultimate as well as the intermediate consumer of electrical power must be adequately protected by any trust established in conjunction with the granting of a preliminary injunction. In order to afford the ultimate consumer the greatest possible amount of protection, it would be necessary to keep accurate records tracing any rate increases attributable to the preliminary injunction through the petitioner's immediate customers to the ultimate consumer of electricity. Thus, in the event that the petitioner's claims on the merits are rejected, any money released from trust could be refunded to the parties who actually bore the cost.

From the foregoing discussion it is clear that in this case the balance of hardships is tipped toward the petitioner. Under these circumstances, the only question that remains to be answered is whether the petitioner has "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Hamilton Watch Co. v. Benrus Watch Co., *supra*, 206 F.2d at 740. The inquiry in this respect is directed only to insuring that the issues raised are not frivolous or obviously without merit.

■ We need not go deeply into the merits of this case to be convinced that the questions raised by the petitioner are sufficiently serious and substantial to allow an injunction to issue. The petitioner's argument on the merits alleges four basic errors in the ruling of the Public Service Commission: (1) that the Commission improperly rejected the petitioner's offered

---

8. *See, e. g.*, Ohio Pub. Util. Comm'n v. United Fuel Gas Co., 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943).

    The parties to this case have conceded that if the petitioner prevails on the merits of its case, any losses it has suffered as a result of an unreasonably low rate would not be recoverable. Although the respondent has argued that the petitioner could conceivably recover past losses by increasing rates after final adjudication, no federal or state cases support this argument.

9. *See, e. g.*, Prendergast v. New York Tel. Co., 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853 (1923); Arizona Corp. Comm'n v. Mountain States Tel. & Tel. Co., 71 Ariz. 404, 228 P.2d 749 (1951); Joy v. Winstead, 70 Idaho 232, 215 P.2d 291 (1950); Northern States Power Co. v. City of Saint Paul, 256 Minn. 489, 99 N.W.2d 207 (1959); City of Baytown v. Gen. Tel. Co. of Southwest, 256 S.W.2d 187 (Tex.Civ.App.1951).

showing of original cost, using instead the current book value of the petitioner's plant in calculating its rate base; (2) that the Commission could not properly have declared a disallowance of expenses as a penalty for its operating inefficiencies; (3) that the overall rate of return provided for by the Commission was insufficient; and (4) that the 10% Federal Income Tax Surcharge was incorrectly disallowed as a component of the petitioner's revenue requirements. It can fairly be stated that, as to each of these points, complicated factual problems are raised and broad issues of law are placed in dispute. The length of the parties' briefs on review and the diverging views of the authorities cited therein attest to the substance of the issues raised on the merits by the petitioner. Accordingly, we hold that the superior court committed error in basing its conclusions on a finding that the petitioner would not probably succeed on the merits of its case. We further hold that the showing made by the petitioner was sufficient to have required the issuance of a preliminary injunction in its favor.[10]

The matter is therefore remanded to the superior court with directions to that court to remand the case to the Public Service Commission with the following instructions: The Public Service Commission shall set an interim rate pending the final adjudication of the petitioner's case in this state. The rate set by the Commission shall use as a rate base for the petitioner a value of $856,712.00; it shall not include any disallowance of expenses for inefficiency; it shall allow for an overall rate of return of 11.25%; and it shall allow the 10% Federal Income Tax Surcharge as one of the components of the petitioner's revenue requirements.

The Public Service Commission shall further be instructed by the superior court to establish a trust fund in which will be deposited funds equaling the difference between the interim rate established pursuant to the instructions set out above and the permanent rate set by the commission. If the petitioner fails in the litigation of its claims, the monies held in trust shall be refunded to the consumers. If the petitioner fails in part and succeeds in part, the monies in the trust shall be prorated and paid over to the petitioner and the consumers in accordance with a proper proration formula. All monies held in trust pursuant to this decision shall be invested in a legal investment or investments pending final adjudication; and if the final decision rendered is favorable to the respondent, the petitioner shall make up any difference between the legal rate of interest and interest actually realized on the trust funds.

The Public Service Commission shall also be instructed to insure, to the extent reasonably possible, that accurate records are kept of rate increases attributable to this injunction, as those increases are passed

10. In so holding, we should point out that this is not the first time a "balance of hardships" approach has been employed in the context of a utility rate case. Northern States Power Co. v. City of Saint Paul, 256 Minn. 489, 99 N.W.2d 207, 212–213 (1959), involved an action for a preliminary injunction under circumstances very similar to those of the present case. In Northern States, it was held that a preliminary injunction should issue in favor of the utility. The following language indicates that a "balance of hardships" approach was used by the court in arriving at its conclusion:

The granting or denial of a temporary injunction involves a balancing of the harm which will result to the parties involved if the injunction is granted or denied. In this case, the consumer is protected by a bond conditioned upon repayment to it of charges collected in excess of those established under [the prior rate] if it is ultimately determined that such rates are reasonable. On the other hand, if the injunction were to be denied, the company would have no way of recouping its losses if it is finally determined that established rates were unreasonable or confiscatory. Under the showing made to the trial court, the equities clearly are in favor of the company, and it would seem that no appreciable harm can result to the consumer inasmuch as he is fully protected by the injunction. (Footnote omitted)

along from the petitioner's immediate consumer to the ultimate consumers of electricity. The issuance of the preliminary injunction by the superior court shall be conditioned upon the keeping of such records. Accordingly, in the event that the petitioner fails in whole or in part on the merits of its litigation, money issuing from the trust shall be repaid to the consumers who actually bore the costs of the petitioner's temporary rate increases.

It is further ordered by this court that the petitioner pursue the adjudication of the merits of its claim through the courts in good faith and with all possible diligence and expedition.