KEYSTONE SERVICES, INC., Petitioner,

v.

ALASKA TRANSPORTATION COMMIS-
SION, Air Van Lines, Inc., Alaska Orient
Van Service, Inc., World Wide Movers,
Golden North Van Lines, Inc., Smyth
Overseas Van Lines, Inc., Respondents.

No. 3151.

Supreme Court of Alaska.

Sept. 2, 1977.

Timothy Middleton, Wohlforth & Flint,
Anchorage, for petitioner.

Douglas A. Hebbel, Asst. Atty. Gen., An-
chorage, Avrum M. Gross, Atty. Gen., Ju-
neau, for respondent Alaska Transp. Comn.

John M. Stern, Jr., Anchorage, for re-
spondents Air Van Lines, Inc., et al.

Before BOOCHEVER, Chief Justice, and
RABINOWITZ, CONNOR, ERWIN and
BURKE, Justices.

## OPINION

BURKE, Justice.

This matter comes to us on a petition for
review.[1] The subject of the petition is an
order of the superior court denying peti-
tioner's application for a stay of a final
order of the Alaska Transportation Com-
mission (hereinafter ATC), pending an ap-
peal of such final order to the superior
court.[2]

Keystone Services, Inc., petitioner, oper-
ates a bonded warehouse facility. A sub-
stantial portion of Keystone's business is
derived from its dealings with Xerox Corpo-
ration, a manufacturer and seller of busi-

---

1. *See* Rules 23 and 24, Alaska R.App.P.

2. *See* AS 42.07.151(a); AS 44.62.560; AS 44.-
62.570.

ness machines and supplies.[3] Keystone, in addition to providing warehouse space, picks up and delivers business machines owned and serviced by Xerox Corporation. New machines are stored at Keystone's warehouse, then delivered to Xerox's customers. Used machines are also picked up and stored, and Keystone provides an area for repair and servicing of machines by Xerox.

After certain parties complained to the ATC concerning Keystone's transportation activities, alleging that by such conduct Keystone was acting as a common carrier without ATC authorization, Keystone applied to the ATC for a common carrier permit.[4]

On August 10, 1976, the ATC issued an order which, although allowing Keystone to transport "general commodities" incidental to its warehouse business, withheld authority to transport "household goods" as defined by the Interstate Commerce Commission in 49 CFR 1040.2(a)-(b). "General commodities," according to the ATC, "are those which do not require special handling or equipment." "Household goods," according to the definition adopted by the ATC, includes "articles requiring the specialized handling and special equipment usually employed in moving household goods."[5] The ATC found that Keystone's transportation of office machines, parts and supplies, as shown by the evidence relating to its Xerox account, came within the latter definition, reasoning:

> The service presently rendered to Xerox consists of several phases. New equipment and supplies are received at the warehouse for storage. These machines are later unpacked and delivered, as new machines, to individual offices. In addition, the evidence indicates that a

portion of the warehouse floor is provided to Xerox as set-up space and space in which used machines may be serviced. A portion of Keystone's service to Xerox consists of moving used machines from one office back to the warehouse and then on to new locations. Thus it appears that not one single function is contemplated but rather a variety of services.

The superior court is empowered to "stay the operation" of an order of the ATC, pending an appeal of such order to the superior court.[6] However, "[n]o stay may be imposed or continued if the court is satisfied that it is against the public interest."[7]

The transcript of the superior court's remarks, in announcing the decision leading to this petition for review, indicates that its denial of a stay was based upon the following grounds:

1. The court's conclusion that judicial "interference with legitimate regulative activity is . . . a harm" against which there could be no protection if a stay was erroneously granted.

2. The court's conclusion that the decision whether to grant or deny a stay turned upon "whether a serious question has been raised" and, its inability to "see a serious question as to the correctness of [the ATC's] decision."

The court also seemed to be influenced by the fact that before entry of the ATC's order, Keystone had been aware that "at least a portion of the commission or all of it at one time or another was viewing their particular activities with some disfavor." Thus, despite recognizing that "[c]ertainly there is a danger of harm, economic harm, loss and the like," to Keystone, the court stated: "[I] can't be controlled by the po-

---

**3.** According to the affidavit of Donald Stoneburner, Keystone's President, the Xerox account provides approximately 20% of Keystone's gross income.

**4.** Keystone's application followed its receipt of a letter from the chairman of the ATC, Jake Johnson, inviting such action as an alternative to having the ATC continue the investigation

initiated after receipt of the complaints mentioned.

**5.** These definitions are virtually identical to those found in 49 CFR 1040.2(a)-(b).

**6.** AS 44.62.570(f).

**7.** AS 44.62.570(g).

tential fiscal harm in this case, and there is evidence in the record . . . that it is not as massive an injury as we might speculate it to be." At the same time, the court "accept[ed] . . . counsel's belief" that in the event that Keystone should ultimately prevail, it would have no "civil relief . . . back against either the regulatory agency or the other protestants."

In *A. J. Industries, Inc. v. Alaska Public Service Commission*, 470 P.2d 537 (Alaska 1970), we were confronted with an issue similar to the one in the case at bar, namely; whether the superior court had properly denied a preliminary injunction in connection with an order by another regulatory agency of the state. In that case we determined that it was error to refuse the relief requested and adopted the "balance of hardships" approach where the party seeking injunctive relief stands to suffer irreparable harm and the opposing party can be protected from injury, holding that in such cases it is not necessary to show probable success on the merits but only that a serious question exists. In *Alaska Public Utilities Commission v. Greater Anchorage Area Borough*, 534 P.2d 549, 554 (Alaska 1975), we further explained our holding, saying:

> In summary, the test announced in *A. J. Industries, Inc.* requires the coexistence of three factors in order to justify the issuance of a preliminary injunction:
>
> 1. The plaintiff must be faced with irreparable harm.
>
> 2. The opposing party must be adequately protected.
>
> 3. The plaintiff must raise 'serious' and 'substantial' questions going to the merits of the case; that is, the issues raised cannot be 'frivolous or obviously without merit.' (footnote omitted)

Despite strong disagreement with the certainty of Keystone's showing of economic loss, if the ATC's order is enforced, respondents do not appear to quarrel with the proposition that such loss will be irreparable, as assumed by the trial court, to the extent that it does occur. Given the uncontroverted evidence that Xerox Corporation's business provides 20% of Keystone's gross income, and the realities of the commercial world, it is only logical to assume that such loss is quite likely to occur if Keystone can no longer provide the kind of services that its customer has required in the past. Thus, while the extent of such loss may be subject to some speculation, it seems clear that there is a very real danger of potentially disastrous consequences for Keystone, for which there would be no adequate remedy in the event that Keystone should ultimately prevail on the merits. This, we believe, is sufficient to satisfy the first requirement of the test announced in *A. J. Industries, supra.*

As to the second requirement, we have little difficulty in concluding that respondents will be "adequately protected," in the event of the issuance of a stay prohibiting the enforcement of the ATC's order. The only harm that could befall the ATC would be a temporary interference with its ability to require compliance with one of its own orders. Such interference is, as already noted, specifically authorized in a proper case by AS 44.62.570(f), unless "the court is satisfied that it is against the public interest." AS 44.62.570(g). As to the remaining respondents, there is no evidence of any significant injury, financial or otherwise, likely to result because of Keystone's continued activities in servicing its Xerox account in accordance with its past practices.

Finally, we believe Keystone raises serious and substantial questions going to the merits of its case.

The ATC, in its order of August 10, 1976, relied upon the provisions of AS 42.10.050, *as it existed before that section was amended in 1973.* At that time, the statute provided in pertinent part:

> Every person who engages for compensation to perform a combination of services which includes transportation of property of others upon public highways shall be subject to the jurisdiction of the commission as to such transportation, and shall not engage in the same without first having obtained a common carrier or contract carrier permit to do so.

The 1973 amendment, in addition to making minor stylistic changes, inserted "except as otherwise provided in this chapter" in the foregoing sentence. § 1, ch. 52, SLA 1973.[8] Keystone argues that by virtue of that amendment it is not subject to ATC regulation, except as to matters of safety and the filing of informational reports, since its activities are those of a private carrier as defined in AS 42.10.420(7)(A). That section provides that a "private carrier" is:

[A] person who transports by motor vehicle, with or without compensation, property which is owned or is being bought or sold by him, or property of which he is the seller, purchaser, lessee or bailee, and the transportation is incidental to and in furtherance of some other primary business conducted by the person in good faith.

AS 42.10.070–42.10.090 establish regulatory jurisdiction of the ATC over "common carriers," "contract carriers," and "private carriers." AS 42.10.090 provides in pertinent part:

The commission shall (1) supervise and regulate every private carrier . . . as to its safety of operation; (2) require every private carrier . . . to file information required by the commission to carry out this chapter, and supervise and regulate each private carrier in all other matters affecting its relationship with the shipping and the general public.

AS 42.10.130 imposes the requirement that every common carrier, contract carrier or temporary carrier obtain a permit to operate in transportation of property for compensation. No such requirement exists for private carriers.

As already noted, in reaching its decision the ATC relied upon AS 42.10.050 as it existed prior to its amendment, saying, after quoting the former language of the statute:

Thus we conclude that, as to the transportation aspect of Applicant's business, Applicant must apply for and obtain a certificate of public convenience and necessity to operate as a common carrier in accordance with the Alaska Motor Freight Carrier Act.

In addition, among its conclusions of law, appears the following:

. . . . .

2. Keystone's activities constitute a 'combination of services' as that term is defined by AS 42.10.050.

3. Keystone is subject to the jurisdiction of the Alaska Transportation Commission as to this transportation activity and must not continue to so engage in this business without first obtaining the appropriate common or contract carrier permit from the Commission. AS 42.10.-050

Since the ATC's order was based upon AS 42.10.050 as it existed prior to its amendment, we perceive a serious and substantial question going to the merits of Keystone's case. Under the former statute Keystone would be required to obtain a common carrier or contract carrier permit in order to transport Xerox's equipment, since it would clearly be a "person . . . who, for compensation, performs a combination of services which includes transportation of property of others upon public highways." However, since 1973, the fact that one renders such services does not automatically subject him to those permit requirements. Under the amended version no such permit is required by AS 42.10.050 if it is "otherwise provided" elsewhere in AS 42.10.

Keystone, despite having applied for a common carrier permit, upon the urging of the ATC, continues to argue that it is a private carrier under the definition found in AS 42.10.420(7)(A), and therefore not subject to the requirement of such a carrier

---

8. The legislature, at the same time, added similar language to AS 42.10.270(b). § 2, ch. 52, SLA 1973. As amended, that section provides:

No private carrier may transport property for compensation, except as provided in this chapter.

Before 1973 private carriers were precluded from such activities. The same session law also redefined "private carrier" in AS 42.10.-420(7). § 3, ch. 52, SLA 1973.

permit, since the transportation it provides to Xerox Corporation "is incidental to and in furtherance of some other primary business conducted by [Keystone] in good faith." While it is obvious that the ATC feels otherwise, we believe that the question presented fulfills the third requirement of the test announced in *A. J. Industries, Inc., supra.*[9] Certainly, it cannot be said that the issues raised are "frivolous or obviously without merit." Under these circumstances, Keystone was entitled to the stay requested. *A. J. Industries, Inc. v. Alaska Public Services Commission, supra* at 541.

In reaching this conclusion we are not unmindful of the command of AS 44.62.-570(g) that "[n]o stay may be imposed or continued if the court is satisfied that it is against the public interest." We simply are not satisfied that such is the case here.

This matter is therefore remanded to the superior court with directions to that court to enter an order staying the operation of the ATC's order, pending the outcome of the appeal of such order to the superior court.

---

**9.** This question is made all the more serious because of the failure of the ATC to promulgate regulations setting forth specific criteria as to when "transportation is incidental to and in furtherance of some other primary business" under the provisions of AS 42.10.420(7)(A). According to Keystone, the ATC has attempted to impose various arbitrary percentage formulae in determining when transportation is incidental. We have grave reservations concerning the Commission's authority to act prior to promulgating suitable regulations. *See Mukluk Freight Lines, Inc. v. Nabors Alaska Drilling, Inc.,* 516 P.2d 408 (Alaska 1973).