Richard BRANDON, Appellant,

v.

DEPARTMENT OF CORRECTIONS,
State of Alaska, Appellee.

No. S–5140.

Supreme Court of Alaska.

Dec. 17, 1993.

Richard Brandon, in pro. per.

John K. Bodick, Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

### OPINION

COMPTON, Justice.

Richard Brandon was found guilty of violating prison regulations at a Cook Inlet Pretrial Facility (CIPT) disciplinary hearing. Brandon claims his right to due process of law was violated in the disciplinary hearing process. The superior court "denied" Brandon's appeal. This appeal followed. We reverse.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 27, 1990, Correctional Officers Smith and Adler were directed by their supervisor, Sergeant Rodgers, to search Richard Brandon's room. The room was a double occupancy room at CIPT shared by Brandon and Jomar Bungay. As a result of the room search a number of items were seized. Included in the items seized were two bottles of what appeared to be "pruno"[1] and a stolen radio. Brandon was charged with violations of institutional rules 22 AAC 05.400(c)(9) ("alteration of food or drink"), 22 AAC 05.400(d)(7) ("possession of anything not authorized for retention or receipt by the prisoner, and not issued through regular facility channels"), and 22 AAC 05.400(d)(17) ("threatening damage to or theft of another's personal property").

The disciplinary hearing was held on January 9, 1991. Brandon was found guilty of adulteration of food or drink and possession of contraband. Brandon was found not guilty of threatening damage to or theft of another's property. Brandon was "assessed" fifteen days punitive segregation and forfeited forty-five days of statutory good time for the (c)(9) charge and five days of punitive segregation for the (d)(7) charge, which were to run concurrently.

Brandon's appeal to Superintendent Briggs was denied on January 28, 1991. Brandon's appeal to the regional director was denied on February 26, 1991. Brandon then filed an appeal to the superior court. AS 22.10.020(d); Appellate Rule 602(a)(2). He moved to stay execution of punishment pending the appeal. The motion for a stay was denied on March 11, 1991. Brandon served the sanction of fifteen days of punitive segregation. Superior Court Judge Milton M. Souter then "denied" Brandon's appeal and awarded the State partial attorney's fees and costs in the amount of $293.72.

### II. STANDARD OF REVIEW

The question of whether Brandon received due process of law in the disciplinary hearing is a question of law which this court reviews de novo. See McGinnis v. Stevens, 543 P.2d 1221, 1236 (Alaska 1975); see also Department of Corrections v. Kraus, 759 P.2d 539, 540–41 (Alaska 1988). Ordinarily, the grant or denial of a preliminary injunction is a matter within the discretion of the

1. "Pruno" is a term used to describe a crudely fermented alcoholic beverage.

trial court, but an order granting or denying a preliminary injunction is reviewable, as any other conclusion of law, when it is based upon an erroneous legal premise. *Douglas v. Beneficial Fin. Co. of Anchorage,* 469 F.2d 453, 454 (9th Cir.1972).

## III. *DISCUSSION*

### A. BRANDON'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED IN THE DISCIPLINARY HEARING

■ In *McGinnis v. Stevens,* 543 P.2d 1221 (Alaska 1975), we examined the manner in which the United States Supreme Court applied the due process clause of the Fourteenth Amendment to prisoner disciplinary hearings in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). We accepted the analysis in *Wolff* and found that the due process provisions of the Alaska Constitution apply to prisoners. *McGinnis,* 543 P.2d at 1236. Like their federal counterparts, state constitutional rights do not entitle prisoners to the full panoply of rights accorded in criminal proceedings. *Id.* Nonetheless the rights are substantial.

> Short of the full panoply of rights accorded an accused in criminal proceedings, the Supreme Court in *Wolff* held that when major prison disciplinary proceedings are instituted against a state inmate, the following procedural safeguards are mandated by the Due Process Clause: at least twenty-four hours advance written notice of the alleged violation; a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action; permitting the inmate facing disciplinary action to call witnesses and to present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals;
> . . .

*Id.* at 1225 (footnotes omitted).

Brandon raises several claims that his right to due process of law was violated in the disciplinary hearing process. The State argues that each of Brandon's claims were, at most, technical mistakes and not violations of Brandon's right to due process.

### 1. Chain of Custody.

■ Brandon's first claim is that his right to due process was violated because there was not an adequate chain of custody document to authenticate the pruno. Brandon claims that the chain of custody documentation was deficient because Officer Adler wrote the disciplinary report, while the Property Seizure Report indicates that the pruno was found by Officer Smith. Brandon asserts that the pruno should have been excluded from evidence because its authenticity could not be adequately established. The State argues in response that both officers were in the room together and it makes no difference which one actually wrote the report.

Brandon does not indicate how the question of who wrote the report was in any way prejudicial to him or violated due process. 22 AAC 05.610 provides:

> Harmless error. Failure of a staff member to follow the regulations set out in this chapter does not invalidate a decision absent a showing of prejudice by the prisoner.

Technically, the officer who finds the alleged contraband is required to write the disciplinary report. Department of Corrections Policy and Procedures # 809.03. However, there is no suggestion that the alleged deficiency in the report in any way prejudiced Brandon. Therefore, since no prejudice to Brandon has been shown, we do not find a due process violation.

### 2. Right to call Defense Witnesses.

■ Brandon claims that his right to due process was violated because he was denied the right to call Sergeant Rodgers as a witness. Sergeant Rodgers was absent from the facility on the day of the hearing. Brandon had requested that Rodgers testify at the hearing, in accordance with 22 AAC 05.-430.[2] Brandon requested Rodgers because

---

**2.** 22 AAC 05.430(a) reads:

The accused prisoner may present witnesses and other evidence in his or her defense, sub-

ject to (c) of this section, if written notice of the witness to be called or evidence to be admitted is given to the disciplinary committee

Rodgers instigated and ordered the search. Rodgers was standing outside the door watching and supervising the search. Brandon asserts that Rodgers would have testified where the pruno was found. The exact location of the pruno is important because Brandon shared the room with another inmate.

The State argues that Rodgers was not in the room and the best evidence of the search was provided by the officers who conducted the search, Alder and Smith. The State asserts that Brandon is arguing another procedural technicality which does not call into question the merits of the hearing. We disagree.

█ The right to call witnesses and present evidence is fundamental to a fair hearing and due process. In *McGinnis,* we rejected the Supreme Court's balancing of the needs of the prison with the right to call witnesses adopted in *Wolff.* We reaffirmed the right to call defense witnesses as fundamental to due process under the Alaska Constitution.

> We fail to see how the right to call witnesses and present documentary evidence will create discipline problems which outweigh the fundamental value these rights provide as vehicles for ascertaining the truth. Absent a right to establish the most basic elements of a defense through presentation of evidence, a disciplinary hearing cannot be characterized as fair in the due process sense.

*McGinnis,* 543 P.2d at 1230.

The burden is on the hearing officer to state reasons why the accused is not permitted to call the witness.

> The chairperson of the disciplinary committee may decline, for compelling reasons, to call a witness.... The chairperson's reason for declining to call a witness or admitting evidence must be noted orally for the record.... This report must contain a brief statement of the reasons why the persons were not called, or the evidence was not admitted.

no later than 24 hours before the hearing, unless good cause is shown why this time

22 AAC 05.430(c). The reasons given by the chairperson of the disciplinary hearing for refusing to allow Rodgers to testify, that he was not present at the facility and that he could not provide the best evidence of what took place, are inadequate. We have stated that it is the "exceptional case" where the chairman should refuse to call a witness. *McGinnis,* 543 P.2d at 1230. The failure of the committee to allow Rodgers' testimony denied Brandon his right to due process of law.

### 3. Chemical testing of the Pruno.

█ Prior to the hearing, Brandon requested that the alleged "pruno" be chemically tested. Brandon's request was denied. Brandon asserts that he cannot be found guilty of alteration of food or drink when there is no evidence that the liquid contained any alcohol. However, Brandon offered no evidence or testimony which called into doubt that the liquid found had been altered in an attempt to make pruno.

The State argues that no chemical test is required when it is "readily apparent that the foodstuffs found had been adulterated in an attempt to make pruno." The State contends that the testimony of the officers established by a preponderance of the evidence that the drink was altered in an attempt to make pruno. Because nothing presented called into question the observations of the officers, we agree.

### 4. Findings of Fact.

Brandon claims that the hearing committee report is inadequate because there are no findings of fact by the disciplinary committee. The committee simply stated that Brandon was found guilty. Brandon argues that without any findings of fact he cannot know whose testimony was believed and what evidence was relied on.

The State argues that the purpose of the findings is to provide Brandon with enough information to advise him of the reason for his guilt and allow Brandon to file a meaning-

requirement can not be met.

ful appeal. It concludes that the report satisfies these purposes.

Department of Corrections regulation 22 AAC 05.455 states that "the report may be considered as evidence by the committee and alone may serve as the basis for a decision." But, while the report is admissible evidence and may alone provide the basis of the committee's decision, the committee is not relieved of the requirement to make specific findings of fact. 22 AAC 05.475 provides in part:

> (a) If a prisoner is found guilty of an infraction, the disciplinary committee shall issue a written decision. The decision *must* include the following:
>
> (1) a summary of the statement of the accused prisoner;
>
> (2) a summary of the testimony of witnesses;
>
> (3) a statement of the committee's adjudicative and dispositive decisions and the reasons for those decisions, including a statement of the evidence relied upon *and the specific facts found to support the committee's decision;* ...

(Emphasis added).

Without findings of fact it is difficult for an inmate to know exactly what formed the basis for the conviction, and to obtain meaningful review. In this case it is clear that not everything in the reports was true, otherwise Brandon would have been found guilty of the

stolen radio charge. Furthermore the reports list "contraband" seized from Brandon including two large paper bags of candy, two ballpoint pens, one roll of tape, twelve AA batteries and three AAA Batteries. There are no findings that these items in fact are all "contraband." While the disciplinary committee may rely on the reports, it is still the task of the committee to be the finder of fact and determine which facts found in the reports support violations of regulations. Because we find Brandon's right to due process was violated by the failure to allow his defense witness, we need not decide if the lack of findings of fact prejudiced Brandon so as to violate his rights. We do note the failure of the disciplinary committee to follow the express requirements of the regulations.

5. **Deviation from Hearing Agenda.**

■ Brandon argues that the hearing agenda requires that witnesses be called and that he have a chance to confront them after he pleads not guilty.[3] In this case, after Brandon's plea of not guilty the committee chairman asked Brandon to present his version of events. Brandon argues that this made him go first and allowed the correctional officers the opportunity to respond to Brandon's account.

The State argues that the variation in the hearing agenda did not shift the burden of proof and did not violate Brandon's right to

---

3. AAC 05.420(b) reads:

The adjudicative phase of the hearing must proceed as follows:

(1) The committee chairperson shall call the meeting to order and, unless the alleged violation is a minor infraction under 22 AAC 05.400(e), ensure that the proceedings are tape-recorded.

(2) The chairperson *shall read the disciplinary report to the prisoner.*

(3) The chairperson shall request the prisoner to admit or deny each of the infractions alleged.

(4) If an admission is entered, the dispositive phase under (c) of this section may begin.

(5) If a denial is entered, the following procedure applies:

(A) if the prisoner or the disciplinary committee has requested the appearance of the staff member who wrote the disciplinary report, the staff member must be called into the room and questioned under 22 AAC 05.435 and 22 AAC 05.455;

(B) if the disciplinary report has noted the existence of witnesses or other evidence relevant to the alleged infraction, the chairperson may call the witnesses or otherwise introduce the evidence;

(C) the accused prisoner or advocate may present the prisoner's version of events, call witnesses, and introduce evidence under 22 AAC 05.430, 22 AAC 05.435, and 22 AAC 05.455;

(D) when the accused prisoner is finished presenting evidence, the prisoner must be excused from the room and the committee shall, by a preponderance of the evidence, find whether the prisoner has committed the infraction; the tape recorder need not be operating during the deliberations of the committee; and

(E) the prisoner must be called back into the room and informed, on the record, of the committee's decision.

due process. We agree. However, we question the State's argument that because the report had already been read into evidence, it would have been a waste of time to have the witnesses repeat the evidence already in the report. A mandatory agenda is set out in the regulation.

## B. THE INCIDENT REPORT CONCERNING THE RADIO DOES NOT VIOLATE BRANDON'S RIGHT TO DUE PROCESS OF LAW

Brandon argues that because one incident report accuses him of three violations, the portion of the report which accuses him of stealing a radio will remain in his institutional file even though he was found not guilty. Brandon argues that this violates due process as well as 22 AAC 05.465. The State argues that while the incident report remains in Brandon's file, the hearing committee's finding of not guilty will also. The inclusion of the report thus will not harm Brandon.

■ Brandon has a right to have the information removed from his file pursuant to 22 AAC 05.465.[4] However, because the file will also contain the finding of not guilty, failure to remove the information does not violate due process.[5]

**4.** 22 AAC 05.465(a) reads:
> If the disciplinary committee finds that the prisoner did not commit an infraction or if a finding of guilt is reversed on appeal, the disciplinary report and appurtenant reports must be removed from the prisoner's case record.

**5.** On remand, if Brandon is again convicted and information concerning the stolen radio is part of reports which are not to be removed from Brandon's record, we see no reason why that portion of the report which refers to the radio cannot be expunged by erasure or redaction to comply with 22 AAC 05.465(a).

**6.** Neither party raised the issue, but because Brandon has already served the seclusion time, the denial of the stay is now moot. Normally this court will refrain from deciding questions where events have rendered the legal issues moot. *Hayes v. Charney*, 693 P.2d 831, 834 (Alaska 1985). However, "where the matter is one of public concern and is recurrent but is capable of evading review," there is a public interest exception to the mootness doctrine. *Id.* (quoting *Doe v. State*, 487 P.2d 47, 53 (Alaska 1971).

## C. THE SUPERIOR COURT'S DENIAL OF STAY WAS IMPROPER

■ Brandon argues that his punishment should have been stayed pending his appeal pursuant to 22 AAC 05.480(i) which provides that "[e]xecution of punishment must be stayed pending an administrative appeal."[6] Brandon further argues that he was irreparably harmed by the failure of the superior court to grant a stay. Brandon has served the fifteen days of punitive seclusion; nothing can be done to give him back that time.

The State argues that the automatic stay pending appeal applies to administrative appeals only. Once Brandon appealed to the superior court, the court was entitled to determine that there was little likelihood of success and deny the stay. The State argues that this court should review the denial of the stay for an abuse of discretion and affirm the superior court.

■ The State is correct that 22 AAC 05.480(i)[7] only requires the punishment to be stayed during the administrative appeal and that the superior court may, in its discretion, deny the stay. However, the court must apply the proper standard in exercising its discretion. Brandon made a showing that he would be irreparably harmed if the stay was

> The public interest exception involves the consideration of three main factors: 1) whether the disputed issues are capable of repetition, 2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues and, 3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.... Ultimately, the determination whether to review a moot question is left to the discretion of the court.

*Id.* (citations omitted). The denial or grant of a stay of prisoner punishment is capable of repetition without review. Because the punishment will often be completed before review is granted, application of the mootness doctrine may repeatedly circumvent review of the issue.

**7.** 22 AAC 05.480(i) reads:
> Execution of punishment must be stayed pending an administrative appeal, unless the prisoner is scheduled to be released from incarceration before the expiration of the time periods allowed for appeal under this section.

not granted. The State's contention that Brandon was not entitled to a stay because of little likelihood of success applies the wrong standard to the grant or denial of this stay.

> While the rule requiring a clear showing of probable success applies in situations where the party asking for relief does not stand to suffer irreparable harm, or where the party against whom the injunction is sought will suffer injury if the injunction is issued, a different rule applies where the party seeking the injunction stands to suffer irreparable harm and where, at the same time, the opposing party can be protected from injury.

*A.J. Industries, Inc. v. Alaska Pub. Serv. Comm'n*, 470 P.2d 537, 540 (Alaska 1970) (footnotes omitted). The superior court should have applied the "balance of hardships" approach as described in *A.J. Industries*. "The balance of hardships is determined by weighing the harm that will be suffered by the plaintiff if an injunction is not granted, against the harm that will be imposed upon the defendant by the granting of an injunction." *Id.*[8] The denial of the stay was improper because the superior court failed to apply the proper test.[9]

---

**8.** Some jurisdictions apply the same balancing approach. In *Harris v. Commissioner of Correction*, 409 Mass. 472, 567 N.E.2d 906, 908 (1991), the grant of an injunction stopping the transfer to federal prison was reversed because the superior court did not balance the factors to be considered before issuing a preliminary injunction. A judge must balance the risk of irreparable harm and the likelihood of success on the merits against the risk of irreparable harm to the opposing party. *Id.*

Other jurisdictions have limited the availability of judicial intervention differently. In Oregon, courts have jurisdiction to review all prison disciplinary cases resulting in punishment of seven or more days of isolation. ORS 421.195. The Oregon courts have limited the availability of a stay of punishment by requiring prisoners to show not only irreparable harm but also likelihood of success on the merits. *Evans v. Oregon State Penitentiary, Corrections Div.*, 87 Or.App. 514, 743 P.2d 168 (1987). Arizona has denied any judicial review of prison disciplinary decisions partially because jurisdiction would allow superior courts discretion to stay disciplinary decisions. *Rose v. Arizona Dep't of Corrections*, 167 Ariz. 116, 120, 804 P.2d 845, 849 (App.1991). We have limited judicial intervention into prison disciplinary decisions to cases concerning

## IV. CONCLUSION

The failure of the disciplinary committee to allow Brandon to call Sergeant Rodgers as a witness denied Brandon his right to due process of law. Neither the fact that the wrong officer signed the disciplinary report nor the failure to test the pruno were errors. Although the failure of the disciplinary committee to make findings of fact, and its deviation from the hearing agenda violated Department of Corrections regulations, we decline to address whether either failure denied Brandon due process of law. The failure to remove reference to the radio in the incident report did not violate Brandon's right to due process of law. The denial of the stay, without balancing the harm to Brandon, was improper. Because we partially reverse the superior court, the award of attorney's fees is VACATED.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.

RABINOWITZ, Justice, with whom MATTHEWS, Justice, joins, dissenting in part.

I dissent from the court's holding that the superior court erred in denying Brandon's

---

fundamental constitutional rights. *Department of Corrections v. Kraus*, 759 P.2d 539, 540 (Alaska 1988). Our decision does not require a court to involve itself in the daily affairs of prison administration to any greater degree than courts are already involved in this limited way. In addition, we find no reason to modify the judicial powers available once jurisdiction is established.

**9.** Our dissenting colleagues conclude that punishment for which there may be no basis in fact or law, and therefore wrongful, is justified by the State's interest in immediate discipline. This conclusion appears to be based in part on their belief that the State's interest cannot be adequately protected if a prisoner's discipline is postponed. This is not necessarily correct. Presumably the prisoner still will be institutionalized following judicial review. The State still will be able to effectuate the prisoner's discipline if, indeed, it is factually and legally supportable. In contrast, a prisoner's remedy often cannot be adequately protected if a stay if denied. If the punishment consists of no more than forfeiture of good time, the forfeiture can be remedied if the factual or legal basis for the punishment is found wanting. However, if the punishment is isolation or some other form of restriction on the prisoner's activity, that cannot be restored.

application for stay "because it failed to apply the proper test." [1] In the court's view the superior court should have employed a "balance of hardships" approach and weighed the harm that Brandon would suffer if a stay were not granted against the harm that the correctional system would suffer by the granting of a stay. The court relies upon *A.J. Industries, Inc. v. Alaska Public Service Commission*, 470 P.2d 537, 540 (Alaska 1970), for its conclusion that the balance of hardships test is appropriate.

Since our decision in *A.J. Industries* we have expressed the balance of hardships approach as follows:

> That standard [that the movant must show only that there are serious and substantial questions going to the merits of the case, and that the movant need not show probable success on the merits] applies only where the injury which will result from the temporary restraining order or the preliminary injunction can be indemnified by a bond or where it is relatively slight in comparison to the injury which the person seeking the injunction will suffer if the injunction is not granted. Where the injury which will result from the temporary restraining order or the preliminary injunction is not inconsiderable and may not be adequately indemnified by a bond, a showing of probable success on the merits is required before a temporary restraining order or a preliminary injunction can be issued.

*State v. United Cook Inlet Drift Ass'n*, 815 P.2d 378, 379 (Alaska 1991) (citations omitted); *see also Olsen Logging Co. v. Lawson*, 832 P.2d 174, 176 (Alaska 1992); *Messerli v. State, Dep't of Natural Resources*, 768 P.2d 1112, 1122 (Alaska 1989), *overruled on other grounds by Olson v. State, Dep't of Natural Resources*, 799 P.2d 289, 292–93 (Alaska 1990).

The state and the public have important interests in effective prison discipline and effective management of correctional facilities. It is apparent that delayed imposition of prison discipline is generally not as effective a deterrent as reasonably immediate discipline. These considerations lead me to the conclusion that a showing of probable success on the merits should be required for court issued stays in matters of prison discipline.[2]

---

1. I agree with the court's conclusion that 22 AAC 05.480(i) only requires the punishment to be stayed during the administrative appeal. This regulation refers only to administrative appeals to the superintendent of the facility and the Department of Corrections' regional director.

2. In *Evans v. Oregon State Penitentiary*, 87 Or. App. 514, 743 P.2d 168 (1987), the court concluded that it should not become enmeshed in the day-to-day administration of inmate discipline. *Id.* 743 P.2d at 172. In my view this concern identifies an additional reason for requiring the movant to make a showing of probable success on the merits before obtaining a stay of any disciplinary measures imposed by correctional authorities.