On petitioners Evan's and Burnell's motions to stay execution of sanction filed July 14 and July 20; on petitioners Merrifield's and Davis' motions for order to show cause filed June 25 and July 9 and for temporary restraining order filed July 9; and on petitioner Lowe's motion for order to show cause why respondent is not in contempt and for temporary restraining order filed July 14, appropriate orders to issue forthwith
September 30, 1987

## EDMUND EVANS,
*Petitioner,*

*v.*

## OREGON STATE PENITENTIARY,
*Respondent.*

(02-87-116-A; CA A44737)

Judicial Review from Oregon State Penitentiary.

Steven H. Gorham, Salem, for motion.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and David L. Kramer, Assistant Attorney General, Salem, appeared contra.

## STEPHEN BURNELL,
*Petitioner,*

*v.*

## OREGON STATE PENITENTIARY,
*Respondent.*

(02-87-411; CA A43534)

Judicial Review from Oregon State Penitentiary.

Gary D. Babcock, Public Defender, Salem, for motion.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and David L. Kramer, Assistant Attorney General, Salem, appeared contra.

## TIMOTHY J. MERRIFIELD,
*Petitioner,*

*v.*

## OREGON STATE PENITENTIARY,
*Respondent.*

(10-86-226; CA A42408)

Judicial Review from Oregon State Penitentiary.

Timothy J. Merrifield, *pro se,* Salem, for motion.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, Scott McAlister, Assistant Attorney General, and David L. Kramer, Assistant Attorney General, Salem, appeared contra.

GARY DAVIS,
*Petitioner,*

*v.*

OREGON STATE PENITENTIARY,
*Respondent.*

(12-86-027A; CA A43065)

Judicial Review from Oregon State Penitentiary.

Gary D. Babcock, Public Defender, Salem, for motion.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, Scott McAlister, Assistant Attorney General, and David L. Kramer, Assistant Attorney General, Salem, appeared contra.

Gary D. Davis, *pro se,* Salem, in response to respondent.

GARY DAVIS,
*Petitioner,*

*v.*

OREGON STATE PENITENTIARY,
*Respondent.*

(02-87-571; CA A43959)

Judicial Review from Oregon State Penitentiary.

Gary D. Babcock, Public Defender, Salem, for motion.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, Scott McAlister, Assistant Attorney General, and David L. Kramer, Assistant Attorney General, Salem, appeared contra.

Gary D. Davis, *pro se,* Salem, in response to respondent.

FRANK LOWE,
*Petitioner,*

*v.*

OREGON STATE PENITENTIARY,
*Respondent.*

(02-87-592; CA A44034)

743 P2d 168

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, Scott McAlister, Assistant Attorney General, and David L. Kramer, Assistant Attorney General, Salem, appeared contra.

Cases consolidated for motions only.

Before Joseph, Chief Judge, and Warren and Deits, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

We consolidate these discipline cases only for the purpose of disposing of issues regarding whether and under what circumstances we will stay enforcement of disciplinary orders and whether respondent should be held in contempt for failing to comply with an order staying enforcement of a disciplinary order. There also is an issue regarding the circumstances under which the Public Defender may be permitted to withdraw from representing an inmate on judicial review of a disciplinary order.

In each case, respondent, after giving the inmate notice and an opportunity to be heard and after conducting a hearing, determined that the inmate had violated a conduct rule and imposed discipline. Although additional sanctions were imposed in particular cases, the sanction in each case involved, at the least, confinement in disciplinary segregation for more than seven days. ORS 421.195.[1] The periods of confinement range from nine to 18 months. In each case, after a period ranging from eight days to six months after the filing of the petition for judicial review, the Public Defender filed a motion to stay execution of the sanction. Except for the dates referred to in the motions, the motions were essentially similar. The motion in *Evans v. OSP* is representative:

"Comes now Edmund Evans, petitioner herein, and Gary D. Babcock, Public Defender for Oregon,[2] and moves this Court for an order staying execution of the sanction petitioner is to serve (nine months in segregation) pending the final disposition and entry of mandate of petitioner's appeal.

---

[1] ORS 421.195 provides:

"If an order places an inmate in segregation or isolation status for more than seven days, institutionally transfers the inmate for disciplinary reasons or provides for nondeduction from the term of the sentence under ORS 421.120(1)(a) and (b), the order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 30 days of the order for which review is sought. The division shall transmit to the court the record of the proceeding, or, if the inmate agrees, a shortened record. A copy of the record transmitted shall be delivered to the inmate by the division. The court may affirm, reverse or remand the order on the same basis as provided in ORS 183.482. The filing of the petition shall not stay the division's order, but the division may do so, or the court may order a stay upon application on such terms as it deems proper."

[2] After the motion for stay was filed, another attorney was substituted as counsel for petitioner Evans. *See* note 11, *infra*.

"The Petition for Disciplinary Review was filed on June 29, 1987. The Appeal Record is due July 29, 1987.

"[Petitioner] is presently incarcerated at Oregon State Penitentiary."

Respondent had 14 days after the filing of each motion to file an answer. ORAP 9.05(4). Except in *Evans,* respondent did not file a timely answer. In *Evans,* the court specifically directed respondent to file an answer, and respondent did so. In *Burnell,* respondent filed an answer five weeks after the motion for stay was filed.

In *Merrifield v. OSP, Lowe v. OSP* and *Davis v. OSP* (two cases), after expiration of the time within which to file an answer, we issued orders:

"On [date], petitioner filed a motion to stay execution of the order imposing discipline for which judicial review is sought in this case. Respondent did not file an answer to the motion within 14 days of the date of the motion as provided in Oregon Rule of Appellate Procedure 9.05(4).

"The motion is allowed. Enforcement of the order dated [date] is stayed until further order of the Court."

In *Merrifield, Lowe,* and the *Davis* cases, the petitioner subsequently moved to hold respondent in contempt on the ground that it had failed to comply with the order staying enforcement. In each case, the petitioner alleged that, within a few days after the court had stayed enforcement of the sanction, the petitioner was placed in "administrative segregation."[3] In each case, imposition of administrative segregation was followed by a hearing and an order confirming the placement. Each order recited one or more incidents of inmate misconduct as the basis for the placement. In all cases, the basis consisted at least of the conduct which gave rise to the stayed disciplinary order; in some cases, the bases included misconduct for which the petitioner previously had been sanctioned. In each, the administrative segregation order recites that this court has stayed enforcement of the original disciplinary order and that the inmate is a threat to the safety of others or to the security of the institution and places the inmate in administrative segregation for a period of one year.

---

[3] For a discussion of the difference between disciplinary segregation and administrative segregation, *see infra,* 87 Or App at 529.

This is the posture of each case:[4]

*Burnell*: The petition for judicial review was filed on March 23; the case has been fully briefed and is ready for oral argument. On July 20, petitioner moved to stay execution of the sanction. The period for answering the motion expired without respondent filing an answer to the motion. On August 26, respondent filed an answer opposing the stay. At issue is whether to allow petitioner's motion for a stay.

*Evans*: The petition for judicial review was filed on June 30, 1987; petitioner moved to stay execution of the sanction on July 14; on July 29, at the court's direction, respondent filed its answer to the motion. As in *Burnell,* the issue is whether to allow petitioner's motion for stay of execution of sanction. In *Burnell,* we have the benefit of both parties' briefs on the merits, and an answer to the motion; in *Evans,* we have an answer to the motion to stay and petitioner's reply to the answer, but no briefs.

*Merrifield*: The petition for judicial review was filed on December 15, 1986. The parties' briefs were filed by April, 1987; the case was argued and, on September 9, we affirmed respondent's disciplinary order. *Solar v. OSP,* 87 Or App 222, 742 P2d 611 (1987). The motion to stay was filed on May 12, and an order staying enforcement of the disciplinary sanction was issued on June 4. On June 14, petitioner was placed in administrative segregation. On June 25, although represented by the Public Defender, petitioner moved *pro se* "to show cause why respondent is not in contempt of court and for [a] temporary restraining order." Respondent failed to answer the motion until, at the court's direction, it filed an answer on July 28. This case is at issue with respect to petitioner's motion to find respondent in contempt and for a restraining order.

*Davis* (A43065): The petition for judicial review was filed on February 11; on July 7, petitioner filed his brief; respondent's brief was due on August 25, but was not filed. On April 10, petitioner moved to stay execution of the sanction; on April 30, the motion was allowed. On June 12, he was

---

[4] Unless otherwise noted, all dates are 1987.

placed in administrative segregation.[5] On July 9, he moved for an order to show cause why respondent should not be held in contempt and for a temporary restraining order. The court requested an answer to the motion, which was filed on July 30, bringing the case to issue on the contempt matter.

*Davis* (A43959): The petition for judicial review was filed on April 27. The motion for stay of the sanction was filed on May 12, 1987, and allowed on June 4. No briefs have been filed. As in A43065, petitioner moved to find respondent in contempt; an answer has been filed at the court's direction; and the case is at issue on the contempt matter.

*Lowe*: The petition for judicial review was filed on May 4; the order staying enforcement of the sanction was issued on June 4, petitioner was placed in administrative segregation on June 12. On July 14, he moved to have respondent held in contempt and for a temporary restraining order. On July 30, respondent filed its answer to the motion, bringing the case to issue on the contempt matter.

*Burnell* and *Evans* are before the court on motions to stay enforcement of sanctions imposed by the disciplinary orders. ORS 421.195, the statute establishing our jurisdiction over prison discipline cases, concludes: "The filing of the petition [for review] shall not stay the division's order, but the division may do so, or the court may order a stay upon application on such terms as it deems proper." Neither ORS 421.195, nor any other statute about prison discipline (*see* ORS 421.180 through ORS 421.195), contains any standards for the agency or this court to use in determining under what circumstances a prison discipline order should be stayed.

In its answers to the motions seeking to have respondent held in contempt, respondent argues that, as a matter of policy, we should not stay enforcement of administrative segregation orders, because we ought not become enmeshed in the day-to-day administration of a correctional institution, particularly in matters of inmate discipline. We

---

[5] The delay between the date of the order staying enforcement of the sanction and placement in administrative segregation is attributable to a second disciplinary segregation order arising from alleged misconduct on petitioner's part that led to a second disciplinary order which is the subject of the second *Davis* case presently before the court. Regardless of the stay of the first disciplinary order, Davis remained confined in disciplinary segregation pursuant to the second order.

wholeheartedly agree, in principle. We are aware of the crowded conditions in Oregon's correctional institutions and of the problems with which we could become involved, particularly in respect to the Oregon State Penitentiary. However, the legislature has seen fit to grant us the responsibility to review and to stay enforcement of certain orders, and we could not adopt a policy that we will never stay enforcement of an order placing an inmate in isolation or segregation. We must address ourselves, then, to the task of determining the standards for deciding whether to stay enforcement of sanctions in prison discipline cases.

In *Von Weidlein v. OLCC,* 16 Or App 81, 514 P2d 560, 515 P2d 936, 517 P2d 295 (1973), *rev den* (1974), the issue was whether the court ought to stay enforcement of an order of the Oregon Liquor Control Commission revoking petitioner's liquor license. We said:

"[T]he primary standard to govern the granting of stays involves a balancing of interests.

" 'In determining whether or not to grant a stay, the courts balance the harm that may be suffered by appellant as a result of the enforcement of the agency order, pending appeal, against the public harm that may result from delaying the effective date of the agency order.' [Citation omitted.]

"A secondary consideration is whether, based on a perusal of the record and without benefit of briefs or argument, the petition for judicial review appears to raise substantial, or at least colorable, legal contentions, or instead appears to be frivolous." *Von Weidlein v. OLCC,* 16 Or App at 88.

*Von Weidlein* arose under the Administrative Procedures Act (APA). At that time, ORS 183.480(3) provided: "The filing of the petition [for judicial review] shall not stay enforcement of the agency order, but the agency may do so, or the reviewing court may order a stay upon the giving of a bond or other undertaking or upon such other terms as it deems proper * * *." ORS 183.480(3) was later repealed, and ORS 183.482 was amended to add a subsection, which now provides:

"(3)(a) The filing of the petition shall not stay enforcement of the agency order, but the agency may do so upon a showing of:

"(A)   Irreparable injury to the petitioner; and

"(B)   A colorable claim of error in the order.

"(b)   When a petitioner makes the showing required by paragraph (a) of this subsection, the agency shall grant the stay unless the agency determines that substantial public harm will result if the order is stayed. If the agency denies the stay, the denial shall be in writing and shall specifically state the substantial public harm that would result from the granting of the stay.

"(c)   When the agency grants a stay it may impose such reasonable conditions as the giving of a bond or other undertaking and that the petitioner file all documents necessary to bring the matter to issue before the Court of Appeals within specified reasonable periods of time.

"(d)   Agency denial of a motion for stay is subject to review by the Court of Appeals under such rules as the court may establish."

The quoted standard essentially tracks the holding of *Von Weidlein v. OLCC, supra.* We recognize that, generally, the APA exempts state correctional facilities from the provisions of ORS 183.482. ORS 183.315(5) provides that various portions of the APA, including ORS 183.482, "do not apply to orders issued to persons who have been committed pursuant to ORS 137.124 to the custody of the Corrections Division."[6] ORS 421.195 makes only a portion of ORS 183.482 applicable to disciplinary review cases ("The court may affirm, reverse or remand the order on the same basis as provided in ORS 183.482"), but it does not incorporate the stay provisions of ORS 183.482(3).

Nonetheless, and in the absence of any specific legislative direction, we adopt the approach of *Von Weidlein v. OLCC, supra,* and, by analogy, the rules in ORS 183.482(3), with certain modifications to account for the unique nature of inmate discipline cases. We hold that an inmate seeking a stay of enforcement of a disciplinary order must show a reasonable likelihood of prevailing on judicial review of the order and irreparable injury if the order is not stayed. If a motion to stay fails to contain a *prima facie* showing of those elements, the motion will summarily be denied. Conversely, if a motion to

_____

[6] The 1987 legislature changed the name Corrections Division to Corrections Department. Or Laws 1987, ch 320, § 1.

stay makes a showing of irreparable injury and a reasonable likelihood of prevailing, the court will allow the motion, unless respondent makes a showing that harm reasonably may be expected to result to other inmates or institutional staff or that the security of the institution reasonably may be threatened.

Effective management of a correctional facility requires that discipline, particularly discipline precipitated by an assault or other violent conduct, be imposed quickly and effectively. Any significant delay in the imposition of a sanction could eliminate the deterrent effect. If we stay a disciplinary sanction, it will be because we are reasonably confident that the order will be reversed on judicial review. For these reasons, the requirement under ORS 183.482(3)(a)(B) that the movant show only "a colorable claim of error" would not sufficiently take into account the circumstances of correctional institution discipline. That is why an inmate must demonstrate a reasonable likelihood of prevailing on judicial review.

The irreparable injury requirement is the same as in ORS 183.482(3)(a)(A). We will assume, generally, that an inmate who otherwise would be entitled to be in the general prison population and whose privileges and limited freedom of movement will further be reduced by placement in segregation has established "irreparable injury," because any significant loss of liberty is irreparable *per se*. However, a petitioner must at least make a claim that an irreparable injury will result from the disciplinary order sought to be stayed.

ORS 183.482(3)(a)(B)(b) provides that, if a movant makes a showing of irreparable injury and a colorable claim of error, a stay shall issue unless "substantial public harm will result if the order is stayed." In the context of correctional facility discipline, the "public" includes inmates other than the one who is the subject of the disciplinary order, correctional facility staff and visitors to a facility, as well as the public at large. All of them have a reasonable expectation that correctional facilities will be secure. Again, because of the unique nature of the population and the need to control the behavior of that population, we hold that, in opposing a stay,

respondent is required only to show that "public" harm reasonably *may* be expected to result if the disciplinary order is stayed.

ORS 183.482(3) requires that an agency be given the opportunity to rule on a request for stay of the agency action before the court may act on the request. ORS 421.195 contains no similar requirement. However, neither did ORS 183.480 in 1973, when the court in *Von Weidlein v. OLCC, supra,* held that the agency should be given an opportunity to rule on a request for a stay. Petitioner Evans argues that it will always be futile to request a stay from respondent, because respondent will always deny a stay. However, in the absence of experience on our part demonstrating that respondent as a matter of policy or practice denies requests for stays without justification, respondent must be afforded an opportunity to address a request to stay a disciplinary sanction before we will consider a request.[7]

■    Petitioner's motion made no showing of irreparable

---

[7] We note that, on July 27, 1987, the Corrections Department adopted temporary administrative rules (OAR 291-105-076 and 291-105-080) that provide procedures and standards for seeking and deciding stays of enforcement of disciplinary orders. OAR 291-105-076 essentially provides the same standards as ORS 183.482(3). It provides, in part:

"V.   Request for Stay of Disciplinary Sanction:

"1.   If an inmate is ordered to serve more than seven (7) days of disciplinary segregation, is institutionally transferred for disciplinary reasons, or if a disciplinary order provides for nondeduction from the term of sentence under ORS 421.120, and if the inmate has filed a petition for judicial review, the inmate may request the superintendent to stay the enforcement of the disciplinary order that is the subject of judicial review.

"2.   The stay request shall contain:

"a.   The name and institution number of the person filing the request;

"b.   A copy of the disciplinary order or a description thereof; and

"c.   A statement of facts and reasons sufficient to show that the stay request should be granted because:

"(A)   The petitioner will suffer irreparable injury if the order is not stayed; and

"(B)   There is colorable claim of error in the order; and

"(C)   Granting the stay will not likely result in the substantial risk of harm to the safety and security of the institution."

These standards differ from the standards adopted by the court in this decision. That the standards do differ is an additional reason why respondent should be given an opportunity to rule on a request for a stay.

injury nor did he address the likelihood of prevailing on judicial review. However, we have the benefit of the parties' briefs and, as suggested in *Von Weidlein v. OLCC, supra,* we may examine petitioner's brief to determine the likelihood of his prevailing on judicial review. He was found to have assaulted another inmate, and his defense is that he acted in self-defense when the other inmate struck him first, drawing blood. It appears from the disciplinary order itself that respondent believes that petitioner initially may have acted in self-defense but that he failed to withdraw from the altercation and continued fighting beyond the necessity to defend himself. We cannot determine at this point whether petitioner will prevail on his self-defense claim, but he does need to show that he is reasonably likely to prevail. Although it may be a close case, we believe that petitioner is not likely to prevail, because respondent is required on the merits to show only that the order is supported by substantial evidence in the record. Therefore, the motion is denied.

■ In *Evans,* respondent's answer resists the motion to stay on the ground that petitioner has failed to exhaust his administrative remedies by requesting the institution for a stay before seeking the same relief from the court. Respondent further objects to a stay on the grounds that petitioner has failed to show "a colorable claim of error" in the proceedings below and that his release into the general prison population would constitute a direct threat to the safety and security of the institution. The administrative remedy to which respondent refers appears to be the administrative rules establishing the procedures and standards for seeking a stay of a disciplinary order from the institution. OAR 291-105-076 and 291-105-080. Those rules were adopted on July 27, 1987. *See* n 7, *supra.* The disciplinary order in question is dated May 28, 1987, the petition for judicial review was filed on June 30, 1987, and the motion for stay was filed on July 14, 1987. We decline to deny relief on the ground that petitioner failed to avail himself of an administrative remedy that did not exist at the time when the motion was filed.

We do not have the benefit of petitioner's brief, but he contends, in his reply to respondent's answer, that the disciplinary order for which judicial review is sought is based in substantial part on factual and legal conclusions drawn from a prior proceeding for which no record was provided to

counsel before the hearing on the disciplinary order now on judicial review. He also argues that the hearings officer who conducted the hearing was not impartial and that the alleged rule violation was not presented within 24 hours of the incident, a violation of an administrative rule. Petitioner also states that his brief "will include *Shumway* [*v. OSP*, 294 Or 462, 657 P2d 686 (1983)] confidential statement, polygraph, and factual conspiracy arguments." The latter refers to petitioner's contention that he was found to have conspired to assault another inmate on the basis of evidence that he was one of three inmates in a stairway, one of whom was assaulted, from which the hearings officer concluded that the two uninjured inmates must have conspired to assault the injured inmate.

■      Although on a full consideration of the case, we might conclude that respondent was justified in finding that petitioner did conspire to assault another inmate, petitioner's allegations about the incompleteness of the record and the tenuous link between the evidence and the hearing officer's conclusion lead us to conclude that he is reasonably likely to prevail on judicial review.

■ ■      As discussed above, we assume that placement in disciplinary segregation irreparably injures petitioner *per se*. Because he has shown that he is reasonably likely to prevail and will be irreparably injured by placement in disciplinary segregation, he is entitled to a stay of the disciplinary order, unless respondent shows that substantial harm reasonably may result from the stay. Respondent argues:

> "[P]etitioner was found to have conspired to assault another inmate. In the resulting assault, the victim was knocked unconscious and suffered a skull fracture and a concussion. Although petitioner denied the violation, the findings were supported by three witness[es'] statements. Petitioner's predisposition toward life-threatening violence suggests his presence in the general prison population pending appeal will directly harm the safety and security of the institution."

When respondent contends that staying placement of an inmate in disciplinary segregation reasonably may cause substantial harm to others or the security of the institution, and the sole basis for that contention is the very incident which is

the subject of judicial review, and the inmate reasonably disputes that he committed the violation, respondent will have failed to show that harm reasonably may result from the stay. Therefore, the motion for a stay of placement in disciplinary segregation in *Evans* will be allowed.

In *Merrifield, Lowe,* and the *Davis* cases, respondent has chosen not to answer the respective motions for stay. In each case, an order issued staying enforcement of the sanction, and respondent has not moved for reconsideration. Therefore, respondent has waived whatever objections it might have urged.

Instead of opposing the motions for stay, as noted, respondent initiated proceedings that resulted in each petitioner's being confined in "administrative segregation." Each petitioner, either *pro se* or through counsel, has moved to hold respondent in contempt and for a restraining order preventing respondent from confining the petitioner in segregation, contending that that is a sham intended to avoid complying with the court's order staying enforcement of the disciplinary sanction.

It is helpful to an understanding of our disposition of the motions in *Merrifield, Lowe* and the *Davis* cases to explain how "administrative" and "disciplinary" segregation differ and how they are similar. Disciplinary segregation is punishment based on a finding that an inmate has violated a specific institutional rule regulating conduct. OAR 291-11-025(1). OAR 291-46-005(2) defines administrative segregation:

"Purpose.   The purpose of this rule is to provide a method to administratively segregate inmates who:
   "(a)   Constitute a continuing and/or immediate threat to the safety and security of the institution;
   "(b)   Are sentenced to death; or
   "(c)   Request protective custody."[8]

Respondent also describes the differences between disciplinary and administrative segregation in greater detail:

---

[8] All of the inmates involved in these case were placed in administrative segregation under the part of the rule relating to inmates who "[c]onstitute a continuing and/or immediate threat to the safety and security of the institution." This decision is limited to that context and does not relate to inmates placed in administrative segregation because they are subject to the death penalty or because they have requested protective custody. The rule is quoted as it existed before June 5, 1987.

"Placement in disciplinary segregation is in the nature of a further 'sentence' the inmate must serve. While in disciplinary segregation, an inmate has no right to institution services and activities beyond the basic necessities (food, clothing, medical care, personal hygiene, visitation, religious services). For instance, an inmate has no right to: recreation (beyond 20 minutes of daily exercise); work, education, telephone privileges, job training. The inmate must generally remain in his cell. Disciplinary segregation is, by design, more harsh than administrative segregation. This is consistent with its purpose: to punish serious inmate offenders and to deter further breach of prison discipline.

"On the other hand, administrative segregation is a management tool that does not necessarily involve punishment or rule violation. * * * Administratively segregated inmates are eligible for the same basic services and program opportunities as are available to the general prison population, unless it is found that the provision thereof 'in a routine manner would cause an immediate and continuing threat to the security of the institution or the safety of its staff or others.' * * *

"Thus administrative segregation is a management tool that is similar to, but not coextensive with, disciplinary segregation."

There are differences in purpose and scope between disciplinary and administrative segregation, but there are similarities as well. The foremost similarity is, of course, regardless of the type of segregation, that the inmate is "segregated" from the general prison population and treated differently from inmates in the general population. Before June 5, 1987, OAR 291-46-080, provided in part:

"(1) Each inmate in administrative segregation will be eligible for the same basic services and program opportunities, in compliance with current ACA standards, as all other inmates in the general population.

"(2) Basic services and programs may be denied, and/or the manner and circumstances by which services and/or programs are provided may vary from the manner and circumstances by which programs and/or services are provided those in the general population, if the provision of services and/or programs in a routine manner or circumstance would cause an immediate and continuing threat to the security of the institution, or the safety of its staff or others. A report of such

action is made for the working file with a copy to the functional unit manager or designee and the institution security manager.

"(3) The officer-in-immediate-charge, as defined in this rule, may temporarily deny or withhold a basic service or program previously granted to an inmate in administrative segregation if there are reasonable grounds to believe the security of the institution, its staff, or others are in immediate danger; however, all such actions must be reported to the superintendent and either affirmed or denied by him/her the following work day. No basic program or service will be permanently withheld without the expressed approval of the superintendent."[9]

Moreover, petitioners Merrifield and Davis in their separate replies to respondent's answer to the court's show cause order allege: "Most of the privileges alluded to by the respondent have now been denied those in administrative segregation and those that have not been denied to all in administrative segregation were denied to [petitioner] under the rule which allows them to be summarily cancelled."

With respect to both types of segregation, respondent gives the inmate notice of the proposed segregation and affords an opportunity to be heard.[10]

Respondent acknowledges that it did not release Merrifield, Lowe or Davis into the general prison population after our order staying enforcement of the segregation sanction, but it contends that it is not in contempt of court on that account because, within a reasonable period of time after issuance of the order, it placed each inmate in administrative segregation. The question which we face is whether, under the circumstances of each of these cases, administrative segregation was a legitimate exercise of institutional authority and a lawful response to the stay order or whether it was a willful evasion of the order. A related issue is whether we may restrain respondent from placing an inmate, or continuing a placement, in administrative segregation, in the context of judicial review of a disciplinary segregation order.

---

[9] Effective June 5, 1987, OAR 291-46-080 was amended to delete subsection (1).

[10] Some of the petitioners allege that the opportunity to be heard with respect to placement in administrative segregation was not "meaningful." For the purpose of this opinion, it is not necessary to address that allegation.

■ Taking the latter issue first, we conclude that we may restrain an administrative segregation order, if the inmate was placed in segregation in whole or in part on account of the same conduct that is the subject of the disciplinary order and the inmate has not engaged in subsequent misconduct justifying administrative segregation.

The difference between respondent and us as to our authority to stay administrative segregation orders arises from the language of ORS 421.195, which confers jurisdiction to review, and to stay, certain orders issued by a correctional facility. ORS 421.195 provides that this court has jurisdiction to and may stay an order if it "places an inmate in segregation or isolation status for more than seven days, institutionally transfers the inmate for disciplinary reasons or provides for nondeduction from the term of the sentence * * *." Respondent appears to argue that, when it places an inmate in administrative segregation, it has merely "transferred" the inmate; therefore, the court may review and stay the order *only if the "transfer" was for disciplinary reasons.* We believe that the *only* fair and allowable characterization of the process is that placement in segregation, whether disciplinary or administrative, is segregation and that jurisdiction to review the order arises from the first, not the second clause, of the first sentence of ORS 421.195. There is no qualification in the statute that, to be reviewable, a segregation order must be for disciplinary reasons only; the only requirement is that the period of segregation be in excess of seven days.

The logical consequence of respondent's argument would be that it could "transfer" an inmate from the general prison population to administrative segregation for a period in excess of seven days and evade judicial review, notwithstanding that the transfer was based on conduct that could be found to constitute a violation of a conduct rule as well as a "continuing and/or immediate threat to the safety and security of the institution." That result is inconsistent with the terms and sense of ORS 421.195.

Respondent also argues that staying enforcement of an administrative segregation order would somehow preclude the institution thereafter from placing the inmate in administrative segregation. That is not true. An order staying

enforcement would merely prevent the institution from placing the inmate in segregation for the same conduct that gave rise to the order that is on judicial review and has been stayed. If, subsequent to the conduct underlying the stayed disciplinary order, an inmate has engaged in conduct justifying disciplinary or administrative segregation, the institution can employ either process, the same as it could in the absence of a stay.

Respondent argues that *habeas corpus* is available to challenge the propriety of placement in administrative segregation. Under our reading of ORS 421.195, judicial review of an administrative segregation order is available if the order placed the inmate in segregation for more than seven days. The availability of another remedy to challenge the propriety of a party's actions does not negate the power of a court to enforce its orders. The authority to make an order, in this case, an order staying enforcement of a disciplinary segregation order, carries with it the authority to enforce the order, ORS 1.160, including the authority to invoke the court's contempt power. ORS 33.010(1)(e).

Respondent's position on the reviewability of administrative segregation orders provides us with the answer to the contempt allegations in these cases. Although we have concluded that administrative segregation, under these circumstances, is judicially reviewable, respondent's position in these cases has been that it is not. In each case an inmate was found to have committed what respondent characterizes as a "major" rule violation. The inmate was "sentenced" to disciplinary segregation for a period of at least nine months and sought judicial review of the order and moved to stay its enforcement. In each case, instead of opposing the motion, respondent did nothing until we issued an order staying enforcement. Then, and only then, did respondent place the inmate in administrative segregation. The administrative order in each instance (1) is based in whole or in substantial part on the same conduct that underlies the disciplinary order for which review is sought and (2) is not based on any allegation of misconduct occurring after the disciplinary misconduct which is the basis for the order on judicial review. The period of confinement under the administrative segregation in each instance is longer than the period of confinement under the disciplinary order—a circumstance that at least creates

the appearance that an inmate's period of segregation was enhanced because he had sought, and obtained in effect by default, an order staying enforcement of the disciplinary segregation order.

Respondent's conduct is wholly unfathomable. In its responses to the respective motions to show cause why it should not be held in contempt, it argues at length that the inmates involved are particularly dangerous individuals and that the court ought not to become involved in the management of correctional institutions. It contends: "The motion for a temporary restraining order * * * presents a serious, unwarranted attack on the superintendent's authority to safely manage the Oregon State Penitentiary." Given that claim, if these individuals are so dangerous and the risk of the court becoming unnecessarily involved in the management of the institution is so great, why has respondent *not once* timely answered any of these inmates' motions for stay without a boost from us? Apparently, part of the answer is that respondent thinks that, by employing administrative segregation, which it believes is not subject to judicial review, it can segregate inmates without interference from this court.

Even though respondent may be entitled to a presumption that it has acted in good faith, the evidence is clear and convincing that it knowingly and wilfully[11] violated the terms of the orders staying enforcement of disciplinary segregation in the *Merrifield, Lowe* and *Davis* cases by placing each of the inmates in administrative segregation, even though each was the subject of an order staying continued placement in disciplinary segregation and when the action was based wholly or in significant part on the same conduct that gave rise to the disciplinary order, not on new misconduct. We hold that respondent is in contempt of court in the *Merrifield, Davis* and *Lowe* cases.

We also conclude that no useful purpose would be served by imposing any sanction. Instead, the orders placing Merrifield, Davis, and Lowe in administrative segregation will be set aside. Our determination to set aside the administrative

---

[11] *See State ex rel Oregon State Bar v. Wright,* 280 Or 713, 815, 573 P2d 294 (1977); *State of Oregon v. Yates,* 208 Or 491, 498-99, 302 P2d 719 (1956); *State v. O'Malley,* 248 Or 601, 605, 435 P2d 812 (1967); and *Hathaway v. Hart,* 300 Or 231, 708 P2d 1137 (1985).

segregation orders and our prior decision to stay enforcement of disciplinary segregation based on past conduct in no way interferes with respondent's right to institute administrative segregation or disciplinary segregation based in whole or in significant part on different inmate misconduct.

In the *Davis* cases, the Public Defender has moved to withdraw as counsel. The sole basis for the motion in each case is a letter written by petitioner himself to the Chief Judge requesting dismissal of the Public Defender and appointment of new counsel. In his letter to the Chief Judge, petitioner states that his attorney

> "has grossly failed to present the facts and issues. * * * He has refused to come over and see me and provide counsel, relying totally on my writing to him, explaining my interest [which] I am not able to do! His office has refused to accept phone calls from me.

> "I have a letter from him that clearly points out his office is swamped, and the man just doesn't have the time, as demonstrated in his work.

> "I would ask for a meaningful hearing by having an attorney that will present to the court pertinent issues, for the court's information * * *."

The court requested a response from petitioner himself regarding counsel's motion. Petitioner's response in relevant part states:

> "The gist of this letter is to inform you that I'd be totally lost without an attorney on appeal. I am not a jail house lawyer and don't know the first thing about law. My only concern about [the Public Defender] is that he wanted me to write to him and articulate the issues for the brief, I was and still am not able to do that. He flat out refused to come over to see me so we can talk and rid ourselves of any misunderstanding. As I stated to you before, I think the court's judgment is only as good as its information, yet [the Public Defender] refuse[s] to present the important issues.

> "At any rate, I would not want to do the brief myself, as I do not know how. Please tell me where I stand."

Subsequently, petitioner moved to "withdraw" the Public Defender and appoint a new attorney.

ORS 151.250 contains the statutory authority of the

Public Defender to provide legal representation. It provides, in relevant part:

"(1) In accordance with subsections (2) to (4) of this section * * *, the defender may act as attorney at any stage of a proceeding before any court, including the Supreme Court, for an individual who is committed to the legal and physical custody of the Corrections Division pursuant to ORS 137.124, and the proceeding is other than:

"(a) A habeas corpus proceeding;

"(b) A proceeding for which counsel is appointed under ORS 135.045, 135.050, 419.498 or 426.100; or

"(c) A proceeding of contempt of court, criminal or civil.

"(2) The defender may act only at the request of the individual described in subsection (1) of this section, or, if no such request is made, at the request of the court or magistrate."

There is no statutory authority for us to appoint or to provide compensation for counsel for inmates seeking judicial review of disciplinary orders under ORS 421.195, other than ORS 151.250. Therefore, if the Public Defender withdraws from representing an inmate, unless the Public Defender has chosen to contract for services with an attorney outside his office to handle the particular case,[12] the inmate must retain counsel or proceed *pro se*.

Under the circumstances, we are unwilling to relieve the Public Defender from representation of a client unless we are satisfied that the client knows the consequences of allowing the Public Defender to withdraw. In this case, although petitioner's letters demonstrate that he is dissatisfied with the Public Defender's representation, they also show that he is not capable of nor willing to represent himself. His motion to remove the Public Defender appears to be conditioned on appointment of new counsel. Given the choice between no representation and representation by the Public Defender, it

---

[12] Occasionally, the Public Defender ascertains that there is a conflict of interest that prevents that office from representing the inmate. Presumably pursuant to ORS 151.240(1)(c), the Public Defender then contracts with an attorney not employed by the Public Defender to represent the inmate. That is what occurred in the *Evans* case. Within two days after filing the motion to stay execution of sanction, the Public Defender moved to withdraw as counsel for petitioner and to substitute another attorney. *See* note 2, *supra*.

also appears that petitioner may prefer to remain represented by the Public Defender.[13] Because the sole basis for the motion to withdraw was petitioner's initial statement of dissatisfaction and request for appointment of new counsel, we deny the motion.

■■■ We will deny a motion to withdraw in a disciplinary review case under ORS 421.195 unless (1) the motion is accompanied by a showing of an arrangement to substitute other counsel or (2) we are satisfied that the client is aware that the consequence of allowing the Public Defender to resign is that the client will have to retain counsel or proceed *pro se* and consents thereto.

We are compelled to add a final note expressing frustration with the manner in which the motions for stay of execution of sanction have been handled by counsel for both the petitioners and respondent. First, with respect to counsel for petitioners, in some of the cases presently before the court the motion for stay of execution of sanction was filed shortly after the filing of the petition for judicial review; however, in others, particularly *Merrifield,* the motion was not filed until several months after the petition for judicial review was filed. Moreover, in *all* of the cases the motion asserted no grounds whatsoever for granting a stay. It cited neither statutory nor case authority, nor propounded any argument in favor of granting the stay. Moreover, once we had issued an order staying enforcement, often a considerable period of time elapsed between the issuance of the order and the filing of a motion to find respondent in contempt for failing to comply with the order, during which time the inmates have contacted the court expressing *their* frustration that respondent is ignoring an apparently clear order from the court staying their placement in segregation.

Compounding the problem, except for the belated answer in *Burnell,* counsel for respondent has steadfastly failed voluntarily to file answers to motions for stays, even though this court had for several months routinely allowed motions for stays in a number of other disciplinary cases not

---

[13] Nothing in this opinion reflects a conclusion that the Public Defender has failed properly to represent Davis or any other petitioner.

presently before the court.[14] Even when we had issued an order staying enforcement of sanctions and the petitioner involved had moved to hold respondent in contempt of court and for a restraining order, respondent failed to file an answer to the motion, unless we had specifically directed that an answer be filed.

To summarize: We hold that, on judicial review of a disciplinary order arising under ORS 421.195, a petitioner seeking a stay of enforcement of a disciplinary order must show (1) that the stay was denied by the institution or that the institution has failed to act on the request for a stay within a reasonable period of time; (2) that the petitioner is reasonably likely to prevail on judicial review; and (3) that irreparable injury will ensue if the order is not stayed. If an inmate has been removed from the general prison population and placed in disciplinary segregation, that will constitute a *prima facie* showing of irreparable injury. If the inmate makes a *prima facie* showing, the motion for stay will be allowed, unless respondent demonstrates that the disciplinary order should not be stayed, which may include a showing that substantial harm reasonably may result to other inmates or institutional staff or that the security of the institution will be substantially threatened by a stay.

We also hold that an order placing an inmate in administrative segregation for more than seven days is reviewable under ORS 421.195. Further, if a motion for stay of enforcement of disciplinary segregation is allowed, the court will not consider placement of the inmate in administrative segregation as complying with the stay if (1) the placement is based in whole or in part on the same conduct underlying the disciplinary order being reviewed and (2) the inmate has not engaged in other misconduct justifying placement in administrative segregation.

We will deny motions filed by the Public Defender to withdraw as counsel in a disciplinary review (or by an inmate to remove the Public Defender), unless (1) the motion is

---

[14] Generally, if we have the authority to grant the relief requested, we will allow a motion if the adverse party does not file an answer. In these cases, we have the authority under ORS 421.195 to stay enforcement of disciplinary orders. The file in each case shows that respondent had been served with a copy of the motion and had an opportunity to oppose it.

accompanied by a showing of an arrangement for substitution of other counsel or (2) we are satisfied that the inmate is aware that the consequence of allowing the Public Defender to resign is having to retain counsel or to proceed *pro se* and consents thereto.

Appropriate orders to issue forthwith.