Submitted on petitioner's request for reconsideration filed May 27 and respondent's motion to dismiss filed November 27, 1992, reconsideration allowed; judicial review of March 12, 1992, order reinstated; order of dismissal otherwise adhered to; motion to dismiss denied March 3, reconsideration denied June 23, petition for review denied August 3, 1993 (317 Or 396)

# LARRY NEAL BAGBY,
*Petitioner,*

*v.*

# OREGON STATE PENITENTIARY,
Department of Corrections,
*Respondent.*

(CA A74108)

847 P2d 898

Larry Neal Bagby, Salem, petitioner *pro se.*

Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Michael D. Reynolds, Assistant Attorney General, Salem, for respondent.

Before Riggs, Presiding Judge, and De Muniz and Durham, Judges.

RIGGS, P. J.

### RIGGS, P. J.

The issues are whether petitioner timely sought judicial review of an order placing him in disciplinary segregation and whether an order placing him in the penitentiary's "intensive management unit" is a judicially reviewable order.

Petitioner filed a petition for judicial review on March 25, 1992, seeking review "of the final order of the respondent, Oregon State Penitentiary dated on or about March 10, 1992, and which ordered petitioner's segregation in the Intensive Management Unit at the Oregon State Penitentiary for one year." Petitioner did not attach a copy of the order. In response to the court's request for a copy of the order, petitioner provided a copy of a disciplinary order dated December 26, 1991, sanctioning petitioner to three months in disciplinary segregation for possessing a dangerous weapon. By order dated May 7, 1992, the court dismissed the judicial review as untimely, because the petition had not been filed within 30 days of the December 26, 1991, disciplinary order. ORS 421.195.

On May 27, 1992, petitioner sought reconsideration of the order of dismissal on the ground that he had intended to seek judicial review of a March 12, 1992, order reclassifying him to maximum custody and placing him in the Intensive Management Unit (IMU). OSP responded that placement in IMU is not judicially reviewable under ORS 421.195 and that the dismissal was proper. Petitioner replied that he was transferred to IMU solely as a result of the conduct that resulted in the December 26, 1991, disciplinary order, and that the conditions of confinement constitute "segregation or isolation status" within the meaning of ORS 421.195. In a separate letter, petitioner also requested "a full Judicial Review of all events that took place from the time of the disciplinary hearing (11-20-91) to the present date."

In order to determine our jurisdiction under ORS 421.195, we directed OSP to file a memorandum addressing these matters: (1) petitioner's allegation that he received no response to his request for administrative review of the December 26, 1991, disciplinary order, in which case the petition for judicial review would have been premature; and

(2) why petitioner's placement in IMU was not an "institutional transfer for disciplinary reasons" or "segregation or isolation status" within the meaning of ORS 421.195. Shortly after filing its response to the court's order, OSP released petitioner from IMU and moved to dismiss as moot the judicial review of the order placing petitioner in IMU.

We deny petitioner's motion to reconsider the dismissal as to the disciplinary order of December 26, 1991. We allow reconsideration and reinstate the judicial review of the March 12, 1992, order placing petitioner in IMU. We deny OSP's motion to dismiss.

■ Petitioner filed a request for administrative appeal of the December 26, 1991, disciplinary order with the superintendent on January 6, 1992. Petitioner claims he received no response until April 22, 1992, and then only after submitting two requests for a copy of the outcome of his administrative appeal to enable him to show that he had filed one. Under Correction Department rules, once an administrative appeal is timely filed from a disciplinary order, the disciplinary order is not final for purposes of judicial review until the petitioner receives the superintendent's response. *Sistrunk v. EOCI*, 108 Or App 19, 813 P2d 74 (1992).

■ Petitioner claims that he filed his petition for judicial review on March 25, 1992, before the challenged order was final, in order to preserve his right to judicial review, because OSP would not furnish him with copies of the orders. Although OSP has belatedly sent the court a copy of the superintendent's January 28, 1992, denial of the appeal of the disciplinary order, it did not address, as directed, petitioner's allegation that he did not receive it until April 22, 1992. Under the circumstances, the court accepts petitioner's claim that the date of service of the superintendent's denial was April 22, 1992.

■ That does not resolve the issue of the timeliness of the petition for judicial review of the original disciplinary order. Under ORS 421.195, petitioner was required to file a petition for judicial review within 30 days of April 22, 1992. He did not do so. The filing of a premature petition for judicial review does not relieve petitioner of the need to file a new petition after the agency order becomes final for purposes of

judicial review. On reconsideration, we decline to reinstate judicial review as to the December 26, 1991, disciplinary order.

■ The petition for judicial review of the March 12, 1992, order placing petitioner in IMU was timely, but OSP challenges the reviewability of that order. ORS 421.195 provides:

> "If an order places an inmate *in segregation or isolation status for more than seven days, institutionally transfers the inmate for disciplinary reasons* or provides for nondeduction from the term of the sentence under ORS 421.120(1)(a) and (b), the order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 30 days of the order for which review is sought." (Emphasis supplied.)

We directed OSP to respond to petitioner's contention that placement in IMU was an institutional transfer for disciplinary reasons within the meaning of ORS 421.195. We also directed OSP to address how the conditions of confinement of an inmate in "segregation or isolation status" differ from the conditions of confinement in IMU. By its response, OSP demonstrates that IMU is both an institutional transfer for disciplinary reasons *and* segregation and isolation status.

OSP argued that IMU is different from disciplinary segregation primarily because of the reason an inmate is there: Placement in disciplinary segregation is punishment for a specific act of misconduct while placement in IMU is the result of a custody classification. This court has already rejected that distinction for purposes of judicial review under ORS 421.195. In *Evans v. OSP*, 87 Or App 514, 532, 743 P2d 168 (1987), we said:

> "There is no qualification in the statute that, to be reviewable, a segregation order must be for disciplinary reasons only; the only requirement is that the period of segregation be in excess of seven days."[1]

---

[1] *See also Snow v. OSP*, 94 Or App 497, 766 P2d 1038 (1988) (ORS 421.195 makes no distinction between administrative segregation and disciplinary segregation; an order placing inmate in administrative segregation for two years is judicially reviewable).

Thus, the relevant questions in determining whether an order placing an inmate in IMU is judicially reviewable are: (1) whether the placement is for more than seven days; and (2) whether the conditions of confinement in IMU correspond to segregation or isolation status.

The first requirement is satisfied. Although placement in IMU is open-ended, a review must be conducted within the first 30 days and every 60 days thereafter. OAR 291-104-025(3). Consequently, any placement in IMU would normally exceed the seven day stay required for jurisdiction under ORS 421.195. In any event, petitioner was in IMU for more than seven days when he filed his petition for judicial review.

The second requirement is also satisfied. Affidavits submitted by OSP show that IMU is virtually identical to disciplinary segregation (DSU), except in the instances when it is more rigorous:

1. Inmates in both units are locked down for over 23 hours per day.

2. There are some double bunk cells in DSU; IMU has only single cells.

3. DSU cells have windows in front of each cell; IMU has only indirect light from translucent windows high in the walls.

4. DSU has an outdoor exercise area enclosed by a chain link fence; IMU exercise rooms are concrete with no direct outside view.

5. Both IMU and DSU inmates get a 40 minute exercise/shower period 5 days per week, except that some IMU inmates get no exercise for the first 30 days. IMU inmates must always be in restraints and escorted by two staff members while out of their cells; DSU inmates are not kept in restraints while in the exercise yard.

6. Both IMU and DSU inmates are allowed only basic visiting privileges and very limited use of the telephone.

7. DSU inmates have a wider range of canteen items available to them than those in IMU.

In light of this comparison, we find that placement in IMU is equivalent to segregation and isolation status. An order placing an inmate there is thus reviewable under ORS 421.195.

Placement in IMU also appears to be an institutional transfer for disciplinary reasons[2] within the meaning of ORS 421.195. According to OSP, transfer to IMU results from an assessment of the totality of factors that an inmate presents an extreme risk of escape, violence, or disruption of the safe, secure, and orderly operation of the facility, OAR 291-104-010(4)(a), and does not result from a single incident. While this may be true in some instances, in this case the inmate has been sent to IMU as a direct result of the points assigned from a single disciplinary violation. In that circumstance, the order placing the inmate in IMU is judicially reviewable under ORS 421.195 as an institutional transfer for disciplinary reasons.

In the past, this court has rejected attempts to insulate similar actions from judicial review. *Evans v. OSP, supra,* 87 Or App at 532. In *Evans,* a judicial review consolidating six disciplinary cases, OSP had transferred inmates to administrative segregation after the Court of Appeals stayed enforcement of the challenged disciplinary segregation sanctions. In response to an order to show cause why it should not be held in contempt for doing so, OSP argued that placement of inmates in administrative segregation was merely a "management tool that does not necessarily involve punishment or rule violation," and was not subject to review by the court. 87 Or App at 530.

In rejecting that argument, we refused to rely on OSP's stated differences between the types of segregation. We found that jurisdiction under ORS 421.195 stemmed from the fact that inmates were in segregation or isolation status for more than seven days predicated on the same conduct which was the subject of the earlier disciplinary order:

"The logical consequence of respondent's argument would be that it could 'transfer' an inmate from the general prison population to administrative segregation for a period in

---

[2] Institutional transfer means "a significant change in the terms and conditions of confinement." *Rutherford v. OSP,* 39 Or App 431, 441, 592 P2d 1028 (1979).

excess of seven days and evade judicial review, notwithstanding that the transfer was based on conduct that could be found to constitute a violation of a conduct rule as well as a 'continuing and/or immediate threat to the safety and security of the institution.' That result is inconsistent with the terms and sense of ORS 421.195." 87 Or App at 532.

The same result is required here. In answer to an "Inmate Communication" sent by petitioner to Ted Long, Assistant Superintendent, asking why he had been sent to IMU, Long replied: "Your custody is maximum, resulting from your disciplinary infraction on 11-17-91, hence your placement in IMU." Because petitioner would not be in IMU but for the additional 47 institutional risk points he was assigned as a result of the disciplinary sanction, the placement is an institutional transfer for disciplinary reasons under ORS 421.195.

■ We deny OSP's motion to dismiss made on the ground that the order is moot. Although petitioner has been released from IMU, the order placing him there has collateral consequences, because his present custody level is still higher than it had been prior to the placement. In addition, it appears that petitioner is currently denied access to programs that would be otherwise available to him.

Reconsideration allowed; judicial review of March 12, 1992, order reinstated; order of dismissal otherwise adhered to. Motion to dismiss denied.